[No. 66148-1. En Banc.]

Argued September 10, 1998. Decided January 14, 1999.

THE STATE OF WASHINGTON, *Petitioner,* v. LEONARDO OSEGUERA ACEVEDO, *Respondent.*

*In the Matter of the Personal Restraint of* LEONARDO OSEGUERA ACEVEDO, *Appellant.*

[Note: Fewer than five Justices concur in headnotes [3] through [12] above.]

182

*Gary A. Riesen, Prosecuting Attorney*, for the State.
*Thomas E. Weaver, Jr.*, for Oseguera Acevedo.

SMITH, J. — Petitioner State of Washington seeks review of a decision by the Court of Appeals, Division Three, reversing a judgment of the Chelan County Superior Court denying the motion of Respondent Leonardo Oseguera Acevedo to withdraw his plea of "guilty" to possession of cocaine with intent to deliver, ruling that Respondent Oseguera did not have actual knowledge that community placement was a direct consequence of a plea of "guilty," rendering his plea involuntary. The appeal of Respondent Oseguera was consolidated with his pro se personal restraint petition, arising from the same incident, in which he claimed ineffective assistance of counsel and illegal search and seizure. This court granted review. We reverse

the Court of Appeals and also dismiss Leonardo Oseguera Acevedo's personal restraint petition.[1]

## QUESTIONS PRESENTED

The questions presented in this case are (1) whether the mandatory one-year term of community placement[2] imposed upon Respondent Leonardo Oseguera Acevedo, resulting from his plea of "guilty" to possession of cocaine with intent to deliver, constitutes a "direct consequence" of his guilty plea; and (2) whether there is merit to the claims by Respondent Oseguera of ineffective assistance of counsel and illegal search and seizure in relation to his charge of possession of cocaine with intent to deliver.

## STATEMENT OF FACTS

On January 18, 1995, Chelan County Sheriff's Deputy Brent R. Patterson[3] was on patrol heading westbound from Wenatchee when he observed a brown Toyota Celica, license number KCW 674, proceeding on the road.[4] As Deputy Patterson passed the automobile, he recognized the driver as Respondent Leonardo Oseguera Acevedo.[5] Deputy Patterson knew Respondent Oseguera from previous

---

[1]The name of Respondent Oseguera was indicated in the caption to one of his cases before the Court of Appeals as Leonardo Acevado Oseguera. The spelling of his name is varied. *His actual surname is Oseguera,* followed by his mother's maiden name, which is *Acevedo.* He is appropriately addressed as Mr. Oseguera. *State v. Oseguera,* 88 Wn. App. 232, 234, 945 P.2d 225 (1997).

[2]Persons convicted of certain classes of serious offenses must, in addition to other terms of sentence, serve mandatory community placement of one year for crimes committed after July 1, 1988. RCW 9.94A.120(9)(a). "Community placement" means that period during which the offender is subject to the conditions of community custody and/or postrelease supervision, which begins either upon completion of the term of confinement (postrelease supervision) or at such time as the offender is transferred to community custody in lieu of earned early release. Community placement may consist of community custody entirely, postrelease supervision entirely, or a combination of the two. RCW 9.94A.030(5).

[3]Clerk's Papers at 49, 111.

[4]*Id.*

[5]*Id.* at 111.

encounters with him and suspected he was driving without a valid license.[6] The deputy confirmed with the dispatch operator that Respondent Oseguera's driver's license was suspended.[7] After stopping Respondent, Deputy Patterson learned from dispatch that Respondent had an outstanding felony warrant for forgery[8] and arrested him on the warrant.[9] During the search incident to arrest,[10] Deputy Patterson found on Respondent's person in a coat he was wearing[11] a pager, $804.95 in United States currency[12] and four small plastic bags of white powder later determined to be cocaine.[13]

On January 23, 1995, Respondent Oseguera was charged by information filed in the Chelan County Superior Court with the crime of unlawful possession of a controlled substance—cocaine with intent to deliver in violation of RCW 69.50.401.[14]

On March 8, 1995, Respondent Oseguera, represented by his court-appointed counsel, David S. Delong,[15] submitted to the Chelan County Superior Court a signed "Statement of Defendant on Plea of Guilty."[16] Appearing before the Honorable Carol A. Wardell, Respondent under a plea bargain entered a plea of "guilty" to unlawful possession of a controlled substance—cocaine with intent to deliver.[17] As part of the plea bargain, the State recommended dismissal

---

[6]*Id.* at 49.

[7]*Id.*

[8]*Id.*

[9]*Oseguera*, 88 Wn. App. at 234.

[10]*Id.*

[11]Clerk's Papers at 49.

[12]*Id.*

[13]*Oseguera*, 88 Wn. App. at 234.

[14]Clerk's Papers at 114-15.

[15]*Id.* at 110.

[16]*Id.* at 105-09.

[17]*Id.* at 39.

of three unrelated charges pending against Respondent, including forgery,[18] obstructing a police officer, and driving with a suspended license,[19] and recommended a prison term at "the bottom of the standard range."[20]

Ordinarily a defendant becomes aware of the mandatory community placement requirement prior to pleading "guilty" from the "statement of defendant on plea of guilty" which CrR 4.2(g) requires to include the following language where applicable:

> *In addition to confinement, the judge will sentence me to* *community placement for at least 1 year.* During the period of community placement, I will be under the supervision of the Department of Corrections, and I will have restrictions placed on my activities.[21]

In this case, the plea form signed by Respondent Oseguera and submitted to the trial court did not include the statement that one consequence of conviction for a drug related offense was community placement for at least one year.[22]

During the hearing, prior to acceptance of Respondent's guilty plea, Judge Wardell engaged in the following exchange with Respondent:

THE COURT: And you understand the Court does not have to follow the prosecutor's recommendation for a sentence? . . .

RESPONDENT: Yes.

THE COURT: [Y]ou understand the Court can either go above the range or below the range if there are substantial reasons to do so.

---

[18]*Id.* at 32. The forgery charge against Respondent Oseguera related to a Social Security card.

[19]*Id.* at 32-33.

[20]*Id.* at 36-37. The actual standard range of the sentence for Respondent Oseguera was not determined by the court at the March 8, 1995 hearing because his criminal history had not then been confirmed. The court rescheduled sentencing for April 24, 1995.

[21]CrR 4.2(g)(6)(k) (emphasis added).

[22]Clerk's Papers at 105-09.

RESPONDENT: It depends on what the Judge wants.

THE COURT: *Right. Okay. And do you understand that when you get out of prison you would be supervised by the Department of Corrections if you remain in the country, and you would have to do what the Department of Corrections tells you? Do you understand that?*

RESPONDENT: Yes. He came to talk to me.[23]

THE COURT: Do you also understand that if you are not a citizen of the United States, this offense is reason to have you deported and to also exclude you from coming back to the United States. Do you understand that?

RESPONDENT: Yes, I understand that, too.

THE COURT: And do you understand, . . . that if you are deported it is a federal crime for you to return to the United States?

RESPONDENT: If they deport me, I won't come back here.

THE COURT: Okay. And . . . it is stated in here that you are not admitting guilt, but you are making this plea in order to take the State's offer. . . . Is that your statement?

RESPONDENT: Well, yes.

THE COURT: Do you understand at the time of sentencing the Court does not treat you any differently than someone who admits guilt. Do you understand that?

RESPONDENT: Yes. . . .

THE COURT: To the charge of possession of cocaine with intent to deliver, . . . how do you plead, guilty or not guilty?

RESPONDENT: Well, yes, I plead guilty. . . .

THE COURT: Do you plead guilty freely and voluntarily?

RESPONDENT: Yes.

THE COURT: Has anybody threatened you to have you plead guilty?

---

[23]*Id.* at 38 (emphasis added). The record does not indicate who actually came to talk to Respondent Oseguera. The court did not ask him the meaning of his response nor did the court tell him the length of time he was required to serve in community placement for at least one year.

RESPONDENT: No.

THE COURT: All right. This Court will accept [Respondent Oseguera's] plea of guilty as being freely and voluntarily made. He knows the consequences of that plea. He knows he's facing substantial time in prison. And there's a factual basis for the plea.

THE COURT: [Respondent Oseguera], Mr. [Victor] Gonzalez read to you the Statement on Plea of Guilty.[24] Did you understand what he read to you?

RESPONDENT: Yes.

THE COURT: Do you have any questions about your plea of guilty?

RESPONDENT: No.

THE COURT: All right. Okay. Then I'll accept the plea, and I'll dismiss the other charges.[25]

Respondent Oseguera wrote three letters to the trial court requesting new court-appointed counsel.[26] The basis for his request was unclear.[27] In his March 24, 1995 letter to the court, Respondent Oseguera continued to object to being represented by defense counsel David S. Delong and

---

[24]*Id.* at 109. Respondent Oseguera's native language is Spanish. A certified interpreter, Victor Gonzalez, translated the statement of defendant on plea of guilty from English to Spanish.

[25]*Id.* at 37-41. A certified court interpreter provided translation from English to Spanish for Respondent Oseguera at the March 8, 1995 hearing.

[26]*Id.* at 6-8. The letters from Respondent Oseguera were dated January 24, 1995, March 3, 1995 and March 24, 1995. The letters were written in the English language and not in Spanish.

[27]*Id.* Respondent's first request for new counsel, dated January 24, 1995, was made the same day defense counsel David S. Delong filed Respondent's Notice of Appearance and Plea of Not Guilty. *Id.* at 10. The Court of Appeals mentioned that Mr. Delong had represented Respondent on at least one prior occasion. *Oseguera*, 88 Wn. App. at 235 n.2. In his March 3, 1995 letter, Respondent renewed his claim of dissatisfaction with Mr. Delong and stated "I don't think he is fair with me." Clerk's Papers. at 58. In his March 24, 1995 letter, Respondent stated "I feel that if [Mr.] Delong thought he had experience enough to be elected [a] judge; that his telling me that he didn't have experience enough to be of help to me was a lie." *Id.* at 56.

stated he wanted to withdraw his plea of guilty.[28] In that letter Respondent Oseguera stated:

> The only reason I pled that way is because I felt over-whelmed. Mr. Delong told me that I should plead guilty as . . . he didn't feel like he had enough experience to be of any real help to me in this case.[29]

At the April 24, 1995 sentencing hearing, the Honorable Ted W. Small addressed the requests of Respondent Oseguera for new counsel and withdrawal of his plea of guilty.[30] At that time, defense counsel Delong denied telling Respondent he was too inexperienced to handle the case.[31] The Prosecuting Attorney offered into the record a letter he received from Mr. Delong dated March 3, 1995[32] which indicated Mr. Delong had been discussing with Respondent the options available to him at least five days before hearing on his plea.[33] Judge Small denied the motion for a new court-appointed counsel for absence of "any factual basis to allow [Respondent Oseguera] to change counsel."[34] In addition, the court granted a continuance of the sentencing hearing and the motion to withdraw the plea of guilty, ordering further inquiry into the reasons Respondent sought to withdraw his plea.[35]

In the interim, at a hearing on May 8, 1995, Judge Carol A. Wardell also denied Respondent's request for new court-

---

[28]*Id.* at 7.

[29]*Id.*

[30]*Id.* at 5-15.

[31]*Id.* at 10-11.

[32]*Id.* at 47.

[33]*Id.* The March 3, 1995 letter stated Respondent was "not willing to take [the] offer" but "is willing to plead to less time." *Id.* However, the State did not offer a sentence below the standard range.

[34]*Id.* at 11.

[35]*Id.* at 12-14. Judge Small continued the sentencing hearing to allow production of the transcript of the March 8, 1995 hearing and to give defense counsel Delong and Respondent Oseguera an opportunity to review it before the second sentencing hearing.

appointed counsel.[36] Judge Wardell advised Respondent Oseguera:

> You have not set forth sufficient reason for a change of an attorney. . . . There is absolutely no basis to indicate that Mr. Delong has not done a good job for you. . . . The law provides that when you're appointed an attorney, the Court has to make the decision whether to change the attorney, not you. . . . [T]he Court is familiar with Mr. Delong's experience, and the Court appoints him based upon that experience.[37]

After the hearing, defense counsel Delong filed a "motion to withdraw guilty plea"[38] on behalf of Respondent Oseguera.

At the second sentencing hearing on May 15, 1995, the Honorable John E. Bridges asked Respondent Oseguera why he wanted to withdraw his plea of guilty.[39] Respondent stated "[T]here seems to be a lot of confusion about my case or a tangle and I don't feel right about it and that's why I want to take my plea back and fight it."[40]

At sentencing, the Prosecuting Attorney asked the court to sentence Respondent to 87 months in prison and "[c]ommunity placement as provided by law."[41] Based upon the facts before him and review of the transcript of the March 8, 1995 proceeding,[42] Judge Bridges denied the motion of

---

[36]Verbatim Report of Proceedings on May 8, 1995 before Judge Wardell filed on March 25, 1996. Because the transcript of the March 8, 1995 hearing had not arrived, Judge Wardell continued Respondent's request to withdraw his plea of guilty and requested that he file a written motion to withdraw his plea of guilty, although Respondent made an oral request to withdraw his plea at the March 8, 1995 hearing.

[37]*Id.* at 5-7.

[38]Clerk's Papers at 43-45.

[39]*Id.* at 16.

[40]*Id.*

[41]*Id.* at 18.

[42]*Id.* at 16-17.

Respondent Oseguera to withdraw his guilty plea,[43] finding that Respondent's plea "was not only fully informed as to the charges and the penalties but also was freely and voluntarily made, . . . ."[44] The court agreed with the recommendation of the Prosecuting Attorney and sentenced Respondent Oseguera to 87 months in prison, the lowest end of the standard range, in accord with the plea bargain.[45] The court signed a judgment and sentence setting Respondent's punishment at 87 months in prison and community placement "for the period of time provided by law."[46]

On June 16, 1995, Respondent Oseguera filed a pro se "notice of appeal" to the Court of Appeals.[47] He also filed a personal restraint petition on September 18, 1995.[48] An

---

[43]*Id.* at 16.

[44]*Id.* at 17.

[45]*Id.* at 20. RCW 9.94A.310, .320, .360. Respondent Oseguera's offender score was fixed at 8, with a standard range of incarceration of 87 to 116 months. One point was added because Respondent committed this offense while he was under community placement attendant to a January 13, 1992 conviction of two counts of delivery of cocaine. Former RCW 9.94A.360(18). The offender score is not contested on appeal. *Oseguera*, 88 Wn. App. at 236, n.3.

[46]*Id.* Clerk's Papers at 24-30. The judgment and sentence described the community placement requirement of RCW 9.94A.120, but did not specifically mention its applicability to Respondent Oseguera or its applicability to drug-related offenses. *Id.* at 28.

[47]*Id.* at 22. Because the Notice of Appeal was untimely filed, the matter was set for a motion to dismiss for failure to file a timely notice under RAP 5.2(a). The "Order Denying Court's Motion to Dismiss for the Untimely Filing of the Notice of Appeal" was filed on August 8, 1995. However, the case was scheduled before a court commissioner on "Court's Motion to Dismiss for Appellant's Failure to Pay the Filing fee of $250.00 or to File an Order of Indigency to Obtain an Order of Expenditure of Public Funds" under RAP 15.2. The Court Commissioner's Ruling on October 17, 1995 dismissed Respondent's appeal. On December 7, 1995, an "Amended Commissioner's Ruling" was filed stating that Respondent Oseguera was "not at fault for his failure to obtain the order of indigency." (The Chelan County Superior Court, in a letter dated June 21, 1995 to defense counsel Delong, stated Respondent had filed a notice of appeal without an order of indigency. The court stated that defense counsel ordinarily forwards a motion and affidavit for order of indigency and that blank forms were included for counsel to forward to Respondent Oseguera. Respondent claims Mr. Delong did not forward those forms to him.) The "Order to Proceed In Forma Pauperis" was filed on March 8, 1996.

[48]*In re Personal Restraint Petition of: Oseguera Acevado*, No 15172-7-III (Wash. Ct. App. Oct. 7, 1997). On March 29, 1996, the cases of *State v. Acevado Oseg-*

"amended order of indigency and order appointing attorney" filed on March 17, 1996 removed David S. Delong as counsel for Respondent and appointed Thomas E. Weaver, Jr. as his counsel for review.[49] The Court Commissioner's ruling filed October 30, 1996 denied Petitioner's "Motion to Present Additional Evidence,"[50] but its "Motion to Supplement Record"[51] was granted without objection on January 28, 1997.

The Court of Appeals (Judge John A. Schultheis writing, Chief Judge Dennis J. Sweeney dissenting) reversed the trial court and granted the motion of Respondent Oseguera to withdraw his plea of guilty to possession of cocaine with intent to deliver.[52] The Court of Appeals reasoned that:

> [Respondent Oseguera's] contention that his plea was involuntary is of constitutional magnitude. Because the error, if proven, was reasonably likely to have affected [Respondent Oseguera's] decision to plead guilty, we find it manifest and accept review.[53]

Finding that no "clear and convincing evidence [existed] that [Respondent Oseguera] explicitly understood that one consequence of his guilty plea was mandatory community placement for one year,"[54] the Court of Appeals concluded

*uera*, No. 14954-4-III, and *In re Personal Restraint Petition of: Oseguera Acevado*, No. 15172-7-III, were consolidated.

[49]Amended Order of Indigency and Order Appointing Attorney, Chelan County Superior Court, filed on March 17, 1996.

[50]Court Commissioner's Ruling, Court of Appeals, Division III, number 14954-4-III, filed October 30, 1996. In the motion, the State requested an order for the Chelan County Superior Court to take additional evidence on the issue of whether Respondent Oseguera entered a plea of guilty knowing a direct consequence of his plea would be 12 months of community placement.

[51]Notation ruling on motion to supplement record, Court of Appeals, Division III, dated January 28, 1997. The State's motion to incorporate the judgment and sentence in Chelan County Cause number 91-1-00463-4 referred to Respondent Oseguera's conviction of unlawful delivery of cocaine on January 13, 1992 and his sentence requiring 12 months of community placement. Clerk's Papers at 119-24.

[52]*State v. Oseguera*, 88 Wn. App. 232, 234, 945 P.2d 225 (1997).

[53]*Id.* at 237.

[54]*Id.* at 238.

the "plea [of Respondent Oseguera] was involuntary and may be withdrawn pursuant to CrR 4.2(f)."[55]

Petitioner State of Washington then sought review by this court, which was granted on May 8, 1998.

## DISCUSSION
### COMMUNITY PLACEMENT

■ Petitioner State of Washington contends Respondent Leonardo Oseguera Acevedo has not raised an issue of manifest constitutional error which may be reviewed for the first time on direct appeal.[56]

Respondent Oseguera offers three counterarguments: (1) his assignment of error is not raised for the first time on appeal, but was in fact raised at trial when he claimed his plea was involuntary; (2) if this court concludes the assignment of error is raised for the first time on appeal, then the Court of Appeals was nevertheless correct in reaching the merits because the issue before this court involves a manifest error affecting a constitutional right of Respondent; and (3) Respondent should have the benefit of the decision of this court in *State v. Ross*[57] on direct appeal.[58]

The Court of Appeals agreed with Respondent Oseguera and granted his motion to withdraw his plea of guilty based upon its interpretation of the decisions of this court in *State v. Ross* and *State v. McFarland.*[59]

In *State v. Ross*, this court held that a mandatory period of community placement is a "direct consequence" of a plea of guilty concerning which the defendant must be informed before entering a voluntary plea of "guilty."[60] Petitioner argues the Court of Appeals should not have

[55]*Id.*

[56]Pet. for Review at 5-6.

[57]*State v. Ross*, 129 Wn.2d 279, 916 P.2d 405 (1996).

[58]Supplemental Br. of Resp't at 4.

[59]*State v. McFarland*, 127 Wn.2d 322, 899 P.2d 1251 (1995).

[60]*Ross*, 129 Wn.2d at 280.

granted Respondent Oseguera relief on this basis because (1) Respondent did not challenge the plea on that ground before the trial court[61] and (2) the record is not sufficient for the appellate court to consider the issue.[62]

Petitioner claims the decision of the Court of Appeals conflicts with the decision of this court in *State v. McFarland*.[63] In *McFarland*, this court held that a constitutional error is not "manifest" and cannot be raised initially on appeal under RAP 2.5[64] if "the facts necessary to adjudicate the claimed error are not in the record on appeal."[65] The question becomes whether the "facts necessary to adjudicate" the challenge raised by Respondent Oseguera to withdraw his plea of guilty require further development. The answer to this question must take into consideration that "[t]he State bears the burden of proving the validity of a guilty plea," including the defendant's "[k]nowledge of the direct consequences" of the plea, which the State may prove from the record or by clear and convincing extrinsic evidence.[66] A defendant, in contrast, bears the burden of proving "manifest injustice," defined as " 'an injustice that

---

[61]Pet. for Review at 5-6. (While Respondent Oseguera filed a motion to withdraw his plea of guilty, his claim that he was not advised of the community placement term is indeed made for the first time on appeal.)

[62]*Id.* Petitioner claims a new trial or hearing should have been granted under CrR 7.8 to allow the trial court to make findings of fact and only then would the Court of Appeals have "been better situated to review the matter." Pet. For Review at 8.

[63]127 Wn.2d 322.

[64]RAP 2.5(a) provides in part:

The appellate court may refuse to review any claim of error which was not raised in the trial court. However, a party may raise the following claimed errors for the first time in the appellate court: . . . (3) manifest error affecting a constitutional right.

[65]*McFarland*, 127 Wn.2d at 333.

[66]*Ross*, 129 Wn.2d at 287 (citing *Wood v. Morris*, 87 Wn.2d 501, 507, 511, 554 P.2d 1032 (1976)).

is obvious, directly observable, overt, not obscure.' "[67] This court elaborated on the determination of a "manifest" constitutional error in *McFarland*, and stated that:

The defendant must identify a constitutional error and show how, in the context of the trial, the alleged error actually affected the defendant's rights; it is this showing of actual prejudice that makes the error 'manifest', allowing appellate review.[68]

This court based its decision in *Ross* on omission of the community placement requirement from the plea form and the "claim by the defendant that he would not have agreed" to the plea bargain if he had been informed of that requirement.[69] Although *State v. Ross* relies upon earlier cases which have concluded that a plea is not voluntary, knowing, and intelligent unless the defendant was aware of all direct consequences,[70] the apparent significance attributed by this court to the defendant's assertion that he would not have entered the plea if he had known of the community placement requirement suggests in that case the term of community placement was a "material" factor in the defendant's decision to enter a plea of guilty. In this case, unlike the situation in *Ross*, there is no indication the term of community placement was "material" or relevant to the decision by Respondent Oseguera to plead guilty.

---

[67]*State v. Saas*, 118 Wn.2d 37, 42, 820 P.2d 505 (1991) (quoting *State v. Taylor*, 83 Wn.2d 594, 596, 521 P.2d 699 (1974)); *State v. Moore*, 75 Wn. App. 166, 171-72, 876 P.2d 959 (1994).

[68]*McFarland*, 127 Wn.2d at 333 (citing *State v. Scott*, 110 Wn.2d 682, 688, 757 P.2d 492 (1988); *State v. Lynn*, 67 Wn. App. 339, 346, 835 P.2d 251 (1992)).

[69]*Ross*, 129 Wn.2d at 287-88. The court explained in *Ross* there was "no dispute" that the record contained no evidence defendant was informed of the mandatory term of community placement and that defendant claimed he would not have agreed to it if he had known of its existence. "Defendant's knowledge of his maximum prison sentence was insufficient to assure his understanding of the direct consequence of community placement. . . . [M]andatory community placement enhanced Defendant's minimum sentence and altered the standard of punishment applicable." *Id.*

[70]*Id.* at 284 (citing *State v. Barton*, 93 Wn.2d 301, 304-05, 609 P.2d 1353 (1980) citing *State v. Johnston*, 17 Wn. App. 486, 564 P.2d 1159, *review denied*, 89 Wn.2d 1007 (1977)).

The incidental significance of the community placement requirement to Respondent Oseguera's plea is the basis for the dissenting opinion of Chief Judge Dennis J. Sweeney which states in summary:

> Neither this record nor [Respondent Oseguera's] argument shows any likelihood that he would have rejected the plea agreement had community placement been listed as a consequence of his plea. The record here demonstrates, for me, the contrary. . . . He was already on community placement for a previous drug possession conviction at the time of this offense . . . . [H]e has not met his burden of showing that he would not likely have pleaded guilty if he had been warned of the mandatory community placement.
>
> Moreover, it is unlikely that the community placement mandated by . . . RCW 9.94A.120(9)(a) for a drug felony offense would even apply to [Respondent] Oseguera. He was in this country illegally when he committed the crime and will be deported as soon as he is released from prison.[71]

The presentence report of Respondent Oseguera prepared by the Department of Corrections included an oblique reference to community placement as an incident to his sentence:[72]

> Because [Respondent Oseguera] has been deported before, it is likely that he will be deported when he is released from prison on this matter. *He will not, therefore, serve his community placement.*[73]

Also, at the time of his arrest for possession of cocaine with intent to deliver, Respondent Oseguera was facing three additional unrelated charges, all of which were dismissed upon his agreement to enter a plea of guilty to the drug of-

---

[71]*Oseguera*, 88 Wn. App. at 238-39, (Sweeney, C.J., dissenting).

[72]Clerk's Papers at 49-54.

[73]*Id.* at 53 (emphasis added). The expected deportation of Respondent Oseguera is the basis for the trial court's advising Respondent at his March 8, 1995 plea hearing that the Department of Corrections would supervise him "if you remain in the country."

fense.[74] In addition, the pro se personal restraint petition filed by Respondent Oseguera challenges the plea of guilty on entirely different grounds.[75]

Respondent Oseguera has not claimed, nor even suggested, he would have insisted upon going to trial if he had been fully informed of the community placement requirement. The focus in this case is not on the adequacy of the record, but on the significance of the facts shown by the record. The record to a limited extent supports the conclusion of the Court of Appeals. It is true Respondent was not fully informed of the community placement requirement. However, the record also supports a conclusion this requirement was not a "material" part of the plea bargain, even though it was not clearly stated in Respondent Oseguera's sentence.[76]

In this case, Respondent Oseguera is an undocumented alien from Mexico who has once been deported, returned to this country illegally, and will most likely be deported again upon his release from prison. He will not likely ever be available to serve a term of community placement. The reference to community placement in *Ross* that it produces a "definite, immediate and automatic effect on a defendant's range of punishment" simply does not apply.[77] One cannot logically conclude Respondent Oseguera's mandatory term of community placement is a "direct consequence" of his plea of guilty.

Petitioner next claims the record is not sufficient for appellate review of the issue of Respondent Oseguera's withdrawal of his plea of guilty:

> [T]he record relevant to what the defendant knew at the time of his guilty plea relative to community placement is obviously incomplete. . . . [T]here are facts in the record

---

[74]*Id.* at 32-33.

[75]Respondent Oseguera's personal restraint petition claims ineffective assistance of counsel and illegal search and seizure.

[76]*See Ross*, 129 Wn.2d at 285.

[77]*Id.* at 284-85.

indicating the defendant would have known of such require-
ment . . . . [and] there is other material evidence which could
be presented on this issue.[78]

Petitioner attempts to distinguish *Ross* by arguing that Re-
spondent Oseguera was adequately advised of the com-
munity placement requirement. That argument is not
persuasive. The trial court alluded to community place-
ment at the March 8, 1995 plea hearing by stating that Re-
spondent Oseguera "would be supervised by the Depart-
ment of Corrections, . . . and [Respondent] would have to
do what the Department of Corrections tells [him]" upon
his release from prison if he remains in the country.[79] It is
true the trial court did not indicate the actual term of com-
munity placement applicable to Respondent Oseguera. The
Prosecuting Attorney's sentencing recommendation[80] and
the judgment and sentence[81] simply referred to a period of
community placement "as provided by law."[82]

In an attempt to prove Respondent Oseguera entered his
plea with knowledge of its "direct consequences," Peti-
tioner, through a motion to supplement the record,[83]
submitted a judgment and sentence from a prior drug
conviction of Respondent Oseguera for which he received a
prison sentence and a one-year term of community place-
ment.[84] In fact, Respondent was on community placement
at the time of his arrest in this case. The utility of that
prior judgment and sentence is questionable because the
form has only boxes allowing the court to check the ap-
propriate term of community placement applicable to each

---

[78]Pet. for Review at 6-7.

[79]Clerk's Papers at 38.

[80]*Id.* at 18.

[81]*Id.* at 24-30.

[82]*Id.* at 18, 24-30.

[83]Motion to Supplement Record granted by Court of Appeals on January 28, 1997.

[84]Clerk's Papers at 119-24.

defendant[85] and does not explain that either a one-year or two-year period is mandatory for certain offenses. Respondent Oseguera was not specifically advised that a mandatory period of one year in community placement following his prison term would result from his plea of guilty in this case to possession of cocaine with intent to deliver. However, his expected deportation upon release from prison satisfies us that his term of community placement was not a "direct consequence" of his plea of guilty. His plea of guilty was voluntary and not the product of a "manifest" constitutional error. We are in agreement with the dissent of Chief Judge Sweeney.

### INEFFECTIVE ASSISTANCE OF COUNSEL

To demonstrate ineffective assistance of counsel, a defendant who enters a plea of guilty must satisfy a two-part test established by the United States Supreme Court in *Strickland v. Washington*[86] and adopted by this Court in *State v. Jeffries*.[87]

A defendant must first show that defense counsel's performance was deficient.[88] To satisfy the "performance" part of the test, defendant must prove that defense counsel's representation "fell below an objective standard of reasonableness based on consideration of all the circumstances."[89] To satisfy the "prejudice" part of the test, a defendant must prove defense counsel's deficient performance prejudiced the defendant, "show[ing] . . . there is a reasonable probability that, but for counsel's errors, [defend-

---

[85]*Id.* at 122.

[86]*Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[87]*State v. Jeffries*, 105 Wn.2d 398, 418, 717 P.2d 722, *cert. denied*, 479 U.S. 922, 107 S. Ct. 328, 93 L. Ed. 2d 301 (1986).

[88]*In re Personal Restraint of Riley*, 122 Wn.2d 772, 780-81, 863 P.2d 554 (1993).

[89]*State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995).

ant] would not have pleaded guilty and would have insisted on going to trial."[90]

The court may begin its review of a defendant's claim with an examination of either part of the two-part test.[91] There is a strong presumption that counsel's representation was effective.[92]

Respondent Oseguera claims defense counsel David S. Delong committed several errors constituting ineffective assistance which resulted in Respondent being "forced to ple[a]d guilty against his wishes."[93] Respondent claims Mr. Delong told him he did not have enough experience to defend him in a jury trial of this case.[94] At the April 24, 1995 sentencing hearing, Mr. Delong denied making such a statement.[95] In response, Judge Small denied Respondent's motion for new court-appointed counsel, concluding an absence of "any factual basis to allow [Respondent] to change counsel."[96] Judge Wardell also denied Respondent's request for new counsel, citing "no basis to indicate that [defense counsel] Delong has not done a good job for [Respondent] . . . . [T]he Court is familiar with [defense counsel] Delong's experience, and the Court appoints him based on that experience."[97] Respondent Oseguera did not provide the trial court in either instance with sufficient evidence of his claimed ineffective assistance of counsel.

Respondent Oseguera contends he demanded a jury trial on the drug charge and implies his counsel's inaction

---

[90]*In re Personal Restraint of Riley*, 122 Wn.2d at 780-81 (citing *Hill v. Lockhart*, 474 U.S. 52, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985)).

[91]*In re Personal Restraint of Riley*, 122 Wn.2d at 780-81.

[92]*State v. Brett*, 126 Wn.2d 136, 198, 892 P.2d 29 (1995).

[93]Personal Restraint Pet. at 8.

[94]*Id.* at 5.

[95]Clerk's Papers at 10-11.

[96]*Id.* at 11.

[97]Verbatim Report of Proceedings (May 8, 1995) at 5-7.

compromised his case.[98] However, Respondent was given ample opportunity to request a jury trial during the three hearings he attended. He chose not to do so. He claims defense counsel Delong "did not have any trial strategy what[so]ever" and that the "only defense [offered to Respondent] was to have [him] plea[d] guilty."[99] Notwithstanding Respondent Oseguera's status on community placement when the arrest was made in this case, the three additional unrelated charges pending against him at the time of his arrest, and his criminal history and its impact on the severity of any proposed sentence, from the work of his counsel Respondent realized resolution of all his criminal charges and received "the lowest end of the standard range" for this offense. From this we conclude he actually benefited from Mr. Delong's representation instead of being prejudiced in any way. The Prosecuting Attorney offered into the record a letter of March 3, 1995 written to him five days before trial by David S. Delong which implies both Respondent Oseguera's "willingness to plead to less time"[100] and his desire to have Mr. Delong negotiate with the Prosecuting Attorney on his behalf. "If a defense counsel's conduct which is later complained of can be characterized as legitimate strategy or tactics, it does not constitute ineffective assistance."[101] In entering into a plea bargain on behalf of Respondent Oseguera, based upon the facts of this case, defense counsel Delong was reasonably engaging in a legitimate strategy or tactic to minimize Respondent's prison sentence. He was successful.[102]

Respondent argues the failure of defense counsel Delong

---

[98]Personal Restraint Pet. at 5.

[99]*Id.* at 6. Respondent Oseguera also claims Mr. Delong "did not compose any defense for [him] as to probable cause of a warrantless search." *Id.* at 2.

[100]Clerk's Papers at 47.

[101]*State v. Osborne*, 102 Wn.2d 87, 99-100, 684 P.2d 683 (1984) (citing *State v. Adams*, 91 Wn.2d 86, 90, 586 P.2d 1168 (1978)).

[102]*Id.* (This court in *Osborne* observed that tactics cannot be the basis for a claim of ineffective assistance unless those tactics were considered incompetent by lawyers of ordinary training and skill in the criminal law.)

to forward to him a prepared motion and affidavit for order of indigency for his signature, upon notification of Respondent's filing a pro se notice of appeal,[103] is an example of Mr. Delong's ineffective assistance.[104] The Chelan County Superior Court acknowledged that defense counsel "normally . . . prepare[s] the motion and affidavit for order of indigency"[105] for their clients. But the order of indigency was accomplished. Postponement in forwarding the signed motion and affidavit for order of indigency, however, did not prejudice Respondent's appeal in this matter.[106]

Respondent has not established that defense counsel David S. Delong engaged in any deficient performance in his case, nor has Respondent established that prejudice resulted from his plea agreement.[107] Respondent has not met the burden of establishing ineffective assistance of counsel and prejudice under the *Strickland* test, that "counsel's performance was deficient and such deficient performance prejudiced the defendant."[108]

### ILLEGAL SEARCH AND SEIZURE

 In the personal restraint petition of Respondent Oseguera, he claims Sheriff's Deputy Brent R. Patterson subjected him to a *"Terry* stop"[109] in absence of "probable

---

[103]The Chelan County Superior Court mailed Mr. Delong a letter dated June 21, 1995 informing him of the court's receipt of Respondent's Notice of Appeal without an order of indigency.

[104]Personal Restraint Pet. at 6.

[105]Letter to David S. Delong from the Chelan County Superior Court dated June 21, 1995.

[106]Amended Commissioner's Ruling, Court of Appeals, Division III, filed on December 7, 1995.

[107]Respondent also claims David S. Delong did not pursue a cause of action based on the "warrantless search" of Respondent's automobile. Personal Restraint Pet. at 2.

[108]*State v. Brett*, 126 Wn.2d at 198 (citing *Strickland*, 466 U.S. at 697, 104 S. Ct. at 2069).

[109]*Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

cause" and an illegal "warrantless search" of his person.[110] "A police officer can conduct an investigative or *Terry* stop based on less than probable cause to arrest" when the police officer has a " ' "well-founded suspicion not amounting to probable cause." ' "[111] But Respondent Oseguera mischaracterizes adequate probable cause. In this case, Deputy Patterson's recollection and past knowledge of Respondent Oseguera and his suspicion that Respondent was driving without a valid license were confirmed by his call to the dispatch operator.[112] After stopping Respondent for the violation of driving while his license was suspended, Deputy Patterson learned from the dispatch operator that Respondent Oseguera had an outstanding felony warrant for forgery and arrested him on that warrant. The search of Respondent's person in this case occurred after his arrest by Deputy Patterson on the outstanding felony warrant.[113] The pager, money and cocaine were found in Respondent's coat incident to that arrest.[114] "A warrantless search is not presumed to be invalid under the Fourth Amendment if it is made incident to a lawful arrest."[115] Deputy Patterson's search of Respondent Oseguera was proper as incident to his lawful arrest on the outstanding felony warrant for forgery.

## SUMMARY AND CONCLUSIONS

A mandatory period of community placement is a "direct consequence" of a plea of guilty concerning which a defendant must be informed before entering the plea. Ordinarily a defendant will learn of the mandatory community place-

---

[110]Personal restraint pet. at 2; Reply to Prosecuting Attorney's Resp. to Personal Restraint Pet. at 2.

[111]*State v. Glover*, 116 Wn.2d 509, 513, 806 P.2d 760 (1991) (citing *Terry v. Ohio*, 392 U.S. at 16-19, and quoting *State v. White*, 97 Wn.2d 92, 105, 640 P.2d 1061 (1982)).

[112]Clerk's Papers at 49.

[113]*Id.*

[114]*Id.*

[115]*State v. White*, 129 Wn.2d 105, 112, 915 P.2d 1099 (1996).

ment prior to pleading "guilty" either from the Statement of Defendant on Plea of Guilty form required by CrR 4.2(g) or orally from defense counsel or the court. However, if the situation arises that the community placement requirement is omitted from the plea form and a statement is made by the defendant to the effect the defendant would not have agreed to plead "guilty" if the defendant had been informed of that requirement, a review of the facts on the record is required.

A review of the record is required to determine the materiality of the omission and statement by the defendant and to determine whether actual knowledge of the mandatory term of community placement was a "direct consequence" of the defendant's plea of guilty.

To determine the materiality of a direct consequence of a plea of guilty, the significance of the facts shown by the record must be examined. If the mandatory community placement produces a "definite, immediate and automatic effect on a defendant's range of punishment," the term of community placement will be considered a true direct consequence of a defendant's plea of guilty. If the term of community placement is found "not definite, not immediate and having no automatic effect on a defendant's range of punishment," the mandatory term of community placement is not a direct consequence of the defendant's plea of guilty and the defendant's plea should be considered voluntary.

In this case, Respondent Oseguera was not provided direct information that a specific period of community placement would result from his plea of guilty to possession of cocaine with intent to deliver. However, under the facts in this case, the expected deportation of Respondent Oseguera after his release from prison leads to the conclusion that his term of community placement was not a "material factor" and not a "direct consequence" of his plea of guilty.

The plea of guilty of Respondent Oseguera was voluntary and not the product of a manifest constitutional error

which would come within the exception for appellate review under RAP 2.5(a)(3). The Court of Appeals was in error in granting Respondent Oseguera's motion to withdraw his plea of guilty.

Respondent Oseguera has not shown that defense counsel David S. Delong engaged in any deficient performance in representing him in this case, nor has Respondent established that prejudice resulted from his plea of guilty. Respondent has not met the burden of establishing "prejudice" under the *Strickland* test. His claim of ineffective assistance of counsel is without merit.

Respondent Oseguera's claim that Sheriff's Deputy Brent R. Patterson did not have probable cause to arrest him is without merit. Deputy Patterson had probable cause to stop Respondent because of his reasonable belief, confirmed by the dispatch operator, that Respondent was driving while his license was suspended. The search of Respondent's person was incident to a valid arrest on the outstanding felony warrant for forgery which was discovered through communication with the dispatch operator. None of the claims in Respondent Oseguera's personal restraint petition has merit.

We reverse the decision of the Court of Appeals which reversed the judgment of the Chelan County Superior Court which denied the motion of Respondent Leonardo Oseguera Acevedo to withdraw his plea of guilty to possession of cocaine with intent to deliver. We also dismiss Respondent Oseguera's personal restraint petition.

GUY, C.J., TALMADGE, J., and DOLLIVER, J. PRO TEM., concur.

JOHNSON, J. (concurring) — ██ I agree with the majority that Oseguera's plea of guilty was knowing, intelligent and voluntary and "not the product of a 'manifest' constitutional error." Majority at 198. I agree with the dissent, however, that the mandatory term of community placement *is* a "direct consequence" of the plea in this case since Oseguera's deportation is not a "certainty." Dissent

at 207. Accordingly, the constitution requires Oseguera be informed of community placement because it is a "direct consequence" of his plea. *State v. Ross*, 129 Wn.2d 279, 280, 916 P.2d 405 (1996). Where I part company with the majority and the dissent is that, under the facts, Oseguera was sufficiently informed.

"Knowledge of the direct consequences of a guilty plea may be satisfied from the record of the plea hearing or clear and convincing extrinsic evidence." *Ross*, 129 Wn.2d at 287 (citing *Wood v. Morris*, 87 Wn.2d 501, 511, 554 P.2d 1032 (1976)). Here, the record demonstrates Oseguera was informed and aware that community placement was a direct consequence of his plea.

The majority acknowledges that during the plea hearing, prior to the acceptance of Oseguera's plea, Judge Wardell engaged in the following exchange with Oseguera:

> THE COURT: . . . *And do you understand that when you get out of prison you would be supervised by the Department of Corrections if you remain in the country, and you would have to do what the Department of Corrections tells you? Do you understand that?*
>
> RESPONDENT: Yes. He came to talk to me.

Majority at 186 (citing Clerk's Papers at 38). Thus, Oseguera was informed as to the condition of community placement before pleading guilty, understood that condition, and acknowledged his understanding to the court at the plea hearing. That is all that is required.[116]

Despite this evidence the majority concludes, as did the Court of Appeals, Oseguera did not understand community placement to be one of the direct consequences of his plea.

---

[116]The State also submitted evidence that Oseguera had previously been found guilty on a drug charge for which he received a prison sentence and one-year community placement. Majority at 197 (citing Clerk's Papers at 119-24). Indeed, Oseguera *was under the supervision of the Department of Corrections and serving community placement at the time of his arrest on the current charge*. Majority at 197; *see also State v. Oseguera*, 88 Wn. App. 232, 238, 945 P.2d 225 (1997). While this evidence, without more, would be insufficient to sustain the validity of the plea, it supports the conclusion that Oseguera understood the nature of the trial court's question and the specific terms of community placement.

The Court of Appeals apparently was persuaded in part because no *written* warning of community placement had been provided to Oseguera as required under CrR 4.2(g). *See State v. Oseguera*, 88 Wn. App. 232, 236, 945 P.2d 225 (1997); *see also* Majority at 185 (noting a defendant ordinarily becomes aware of community placement consequence under requirements of CrR 4.2(g)).

I agree the better course is to follow the specific dictates of CrR 4.2(g) because the record would then be clear. However, failing to do so does not necessarily result in "manifest injustice" requiring withdrawal of the plea. Although CrR 4.2 contains numerous procedural safeguards designed to ensure a defendant's constitutional rights, the rule's procedural requirements are not constitutionally mandated. *State v. Branch*, 129 Wn.2d 635, 642, 919 P.2d 1228 (1996). "Failure to adhere to the technical requirements of CrR 4.2(g) does not in itself result in a constitutional violation or amount to a manifest injustice." *Branch*, 129 Wn.2d at 642.

"Whether a plea is knowingly, intelligently, and voluntarily made is determined from a totality of the circumstances." *Branch*, 129 Wn.2d at 642 (citing *Wood*, 87 Wn.2d at 506). Here, the circumstances confirm Oseguera was fully aware community placement would be a consequence of his plea. Accordingly, Oseguera has not shown manifest injustice requiring withdrawal of the plea. Therefore, I concur.

DURHAM and MADSEN, JJ., concur with JOHNSON, J.

ALEXANDER, J. (dissenting) — The majority concludes that although the sentencing judge did not inform Oseguera that a period of community placement would result from his plea of guilty, the omission was not significant because Oseguera would be deported to Mexico following his release from prison and, therefore, would not have been subject to community placement. Because of this "expected deportation," the majority concludes, community placement was

not a "direct consequence" of his plea, and the failure to inform him about it was immaterial. Majority op. at 203.

■ If deportation of Oseguera can be said to be a certainty, I would agree with the majority. The record does not, however, support a conclusion that his deportation is inevitable. Significantly, the State has not asserted in its brief or in oral argument that deportation is a foregone conclusion. Indeed, counsel for the State admitted at the hearing before this court that "I don't think that we can conclude that he [Oseguera] was in fact going to be deported." Oral argument tape (Sept. 10, 1998). The deputy prosecutor stated, additionally, that "I don't believe that there is anything in the record that this court can look at to say for sure that this man was going to be deported" or that he will be "subject to the United States' jurisdiction, not the state of Washington."[117] Oral argument tape (Sept. 10, 1998).

In light of the fact that the record does not support the necessary conclusion that Oseguera will be deported to Mexico upon his release from prison, we should presume, as did the Court of Appeals, that he will not be deported and that mandatory community placement is a direct consequence of his plea.[118] The sentencing court's failure to advise Oseguera that he will be subject to community placement upon release from prison is, therefore, a material

---

[117]The only reference in the record to a possible deportation is in the presentence report forwarded to the sentencing judge. It indicates only that "it is likely that he [Oseguera] will be deported." Clerk's Papers at 53.

[118]Although Justice Johnson indicates in his concurring opinion that he agrees with me that the record does not state that Oseguera will be deported to Mexico, he nevertheless determines that Oseguera was sufficiently informed as to the condition of community placement before pleading guilty. See Concurring op. at 204-05. He bases this conclusion on colloquy between the sentencing court and Oseguera, wherein the court informed Oseguera that he would be subject to the supervision of the Department of Corrections (DOC) when he was released from prison. See Concurring op. at 205. In my view, this statement by the sentencing court does not support his conclusion because it assumes that if one is told that they are subject to the supervision by DOC, they would somehow know that they are subject to community placement. Such an assumption is not warranted.

omission[119] which can be cured only by permitting Oseguera to withdraw his plea of guilty. Because the majority and concurring opinions have concluded otherwise, I dissent.

SANDERS, J., concurs with ALEXANDER, J.

[119]In *State v. Ross*, this court held that "mandatory community placement constitutes a direct consequence of a guilty plea and failure to so inform a defendant renders that plea invalid." *State v. Ross*, 129 Wn.2d 279, 280, 916 P.2d 405 (1996).