# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 50252-6-II |
| Respondent, | |
| v. | |
| JESUS NICOLAS GORDILLO REYES, | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — Jesus Gordillo Reyes appeals his convictions and sentence. Gordillo Reyes pleaded guilty to four counts of second degree child molestation. For the first time on appeal, Gordillo Reyes argues that his plea was invalid. Specifically, Gordillo Reyes asserts that the trial court improperly advised him of a direct consequence of his plea because the trial court stated that Gordillo Reyes would be subject to community custody, but the court did not impose community custody. The State argues that Gordillo Reyes cannot raise this issue for the first time on appeal. Gordillo Reyes also argues that the trial court imposed an impermissibly broad sentencing condition when it ordered him to have no contact with minors, which included his minor biological daughter.

We hold that Gordillo Reyes's claim that his plea was invalid fails because he cannot show a manifest error affecting a constitutional right. However, we strike the sentencing condition prohibiting Gordillo Reyes from contact with all minors and remand for the trial court to impose a sentencing condition after considering Gordillo Reyes's fundamental right to parent in conjunction with the compelling interest of protecting children.

FACTS

On January 4, 2016, the State charged Gordillo Reyes with three counts of first degree child molestation and one count of first degree rape of a child. Gordillo Reyes ultimately agreed to plead guilty to an amended information charging him with four counts of second degree child molestation.

Gordillo Reyes's statement on plea of guilty lists the State's recommendation which included "120 mos (Agreed Exceptional)" and "community custody." Clerk's Papers (CP) at 11. The maximum term for his crimes was a sentence of 120 months. RCW 9A.20.021(1)(b). The statement also contained boilerplate language stating:

> If this offense is a sex offense that is not listed [above], then in addition to sentencing me to a term of confinement, the judge may order me to serve up to one year of community custody if the total period of confinement ordered is not more than 12 months. If the period of confinement is over one year . . . the judge will sentence me to community custody for 36 months or up to the period of earned release, whichever is longer.

CP at 10. The statement on plea of guilty further stated that the trial court did not have to follow any recommendations as to sentencing.

At the plea hearing, while discussing the State's recommendations, the following conversation occurred:

> THE COURT: In Paragraph 6G is the prosecutor's recommendation for sentence in this case, if you enter your plea of guilty today, 120 months. It's an agreed exceptional sentence. That you'd have a psychosexual evaluation, required—you'd be required to have an HIV test. You're to have no contact with minors. Okay?
>     I can't read this.
> [DEFENSE COUNSEL]: I can read that into the record.
> THE COURT: It's "community" something.
> [THE STATE]: Probably custody, Your Honor.
> [DEFENSE COUNSEL]: I can read that into the record, if you wish.
> THE COURT: Okay. Community—you would be subject to community custody. You're to register as a sex offender.

2

Verbatim Report of Proceedings (VRP) (Feb. 3, 2017) at 12.

Gordillo Reyes affirmed that he had gone over the statement of defendant on plea of guilty with his attorney and that his attorney was able to answer all of Gordillo Reyes's questions. The trial court accepted Gordillo Reyes's guilty plea. Also during the plea hearing, Gordillo Reyes requested to have contact with his minor daughter, and the court allowed Gordillo Reyes to have supervised telephonic contact with his daughter prior to sentencing. The State did not object to Gordillo Reyes having supervised contact with his minor daughter prior to sentencing.

At sentencing, the prosecutor articulated the State's recommendation into the record. The State represented to the trial court that the recommendation was agreed, stating, "The State's recommendation is as follows: An agreed exceptional sentence of 120 months *without community custody upon release*." VRP (April 14 2017) at 22 (emphasis added). Gordillo Reyes's attorney acknowledged that the maximum sentence was agreed by asking the court to "follow the recommendation." VRP (April 14 2017) at 27. The trial court imposed the parties' joint exceptional sentencing recommendation of 120 months, and entered findings of fact and conclusions of law in support of that exceptional sentence. The trial court could not, and did not impose any community custody. The court also ordered that Gordillo Reyes have no contact with minors.

Gordillo Reyes appeals his guilty plea convictions and his sentencing condition of no contact with minors.

ANALYSIS

I. GUILTY PLEA

Gordillo Reyes argues that his guilty plea is involuntary because the trial court misinformed him about a direct consequence of his guilty plea, specifically that he would receive community custody as part of his sentence. Gordillo Reyes asserts that the court never informed him that he would *not* be subject to community custody if he agreed to the exceptional sentence. The State argues that Gordillo Reyes waived this argument because he did not raise it in the trial court and because he fails to demonstrate a manifest error affecting a constitutional right. We agree with the State that Gordillo Reyes has failed to show manifest error.

"Generally, a defendant waives any issues he did not raise in the trial court." *State v. Knotek*, 136 Wn. App. 412, 422, 149 P.3d 676 (2006); RAP 2.5. However, a defendant may raise a "manifest error affecting a constitutional right" for the first time on appeal. RAP 2.5(a)(3). The alleged error here is undisputedly one of constitutional magnitude because due process requires that a defendant's guilty plea be knowing, voluntary, and intelligent. *State v. Weyrich*, 163 Wn.2d 554, 556, 182 P.3d 965 (2008). However, the alleged error must also be manifest. *State v. Walsh*, 143 Wn.2d 1, 8, 17 P.3d 591 (2001). A manifest error requires a showing of actual prejudice. *Walsh*, 143 Wn.2d at 8. In determining whether an error is manifest, we preview the merits of the claimed error to determine whether the argument is likely to succeed. *Walsh*, 143 Wn.2d at 8. Demonstrating that a plea was involuntary is sufficient to

prove a manifest injustice. *Walsh*, 143 Wn.2d at 8. Thus, we examine the merits of Gordillo

Reyes's argument to determine whether it is likely to succeed.[1]

A guilty plea may be deemed involuntary when it is based on misinformation regarding a

direct consequence of the plea. *State v. Buckman*, 190 Wn.2d 51, 59, 409 P.3d 193 (2018). A

defendant must be informed of all direct consequences of pleading guilty, including mandatory

community custody. *State v. Turley*, 149 Wn.2d 395, 398-99, 69 P.3d 338 (2003). Failure to

inform a defendant that he will be subject to mandatory community custody if he pleads guilty

renders a plea invalid. *Turley*, 149 Wn.2d at 399. When a defendant completes a written plea

statement and admits to reading, understanding, and signing the statement, a strong presumption

arises that the plea was voluntary. *State v. Smith*, 134 Wn.2d 849, 852, 953 P.2d 810 (1998).

Second degree child molestation is a class B felony. RCW 9A.44.086(2). The maximum

allowable sentence for a class B felony is 120 months. RCW 9A.20.021(1)(b). "'[C]ourts must

limit the total sentence they impose to the statutory maximum.'" *State v. Hagler*, 150 Wn. App.

196, 204, 208 P.3d 32 (2009) (quoting *State v. Linerud*, 147 Wn. App. 944, 951, 197 P. 3d 1224

(2008)). "Community custody" is a portion of an offender's confinement that is served in the

community. *In re Postsentence Petition of Smith*, 139 Wn. App. 600, 603 n.1, 161 P.3d 483

(2007). So long as the trial court complies with the applicable sentencing statutes, it "is within

---

[1] Gordillo Reyes cites to *State v. Mendoza*, 157 Wn.2d 582, 141 P.3d 49 (2006) to assert that he has not waived his right to contest the validity of his plea "because no one brought the misinformation to his attention" prior to sentencing. Br. of App. at 10. *Mendoza* held that a defendant who does not object to sentencing or move to withdraw his plea when he learned of a mistake in his offender score before sentencing waived the ability to challenge his plea on appeal. 157 Wn.2d at 584. *Mendoza* did not address whether a defendant waives the ability to challenge his plea for the first time on appeal where the defendant has not shown manifest constitutional error.

the trial court's discretion to determine how much of that sentence is confinement and how much is community custody." *Hagler*, 150 Wn. App. at 204; *Linerud*, 147 Wn. App. at 951.

Here, Gordillo Reyes agreed to be sentenced to 120 months. But the trial court was not bound by that agreement. RCW 9.94A.431(2). During the plea colloquy, the trial court did not tell Gordillo Reyes that he would be sentenced to community custody. Rather, the court stated that Gordillo Reyes would be "subject to community custody." VRP (Feb. 3, 2017) at 12. And although the statement on defendant's plea of guilty stated that Gordillo Reyes would be sentenced to 36 months community custody, "or up to the period of earned release, whichever [was] longer," the form also made clear that community custody was "in addition" to "a term of confinement." CP at 10.

Because the court sentenced Gordillo Reyes to the maximum term allowed under the law, sentencing Gordillo Reyes to community custody was a legal impossibility, and therefore not a direct consequence of his plea requiring disclosure by the trial court. The court's decision in *State v. Acevedo*, 137 Wn.2d 179, 970 P.2d 299 (1999) is informative here. In *Acevedo*, a noncitizen defendant was arrested for an outstanding warrant for forgery. 137 Wn.2d at 184, 196. The trial court informed Acevedo that if he pleaded guilty, he might be deported after his sentence. *Acevedo*, 137 Wn.2d at 186. But the court did not inform him that he would have to serve community placement if he were not deported. *Acevedo*, 137 Wn.2d at 196.

The court held that while community placement is generally a direct consequence requiring disclosure by the court, Acevedo's community placement was not a direct consequence of his guilty plea because it was not material to his decision to plead guilty as failed to claim that he would not have pleaded guilty if he knew about the community custody placement, and

because he was "not likely ever be available to serve a term of community placement" due to his deportation. *Acevedo*, 137 Wn.2d at 196.

Similarly here, Gordillo Reyes never asserted or suggested that he would not have pleaded guilty if he had been informed of the lack of availability of community custody. Further, it was impossible for Gordillo Reyes to serve any community custody because the court sentenced him to the agreed exceptional sentence of 120 months, the statutory maximum for his crimes. This sentence, agreed to by Gordillo Reyes, leaves no room for community custody as a possible sentence. Accordingly, community custody placement in this case was not a direct consequence of Gordillo Reyes's plea.

Because community custody was not a direct consequence of his guilty plea, Gordillo Reyes's argument that the trial court misinformed him about community custody is without merit. Accordingly, Gordillo Reyes fails to demonstrate that his plea was involuntary and therefore fails to demonstrate manifest error. *See Walsh*, 143 Wn.2d at 8. We therefore do not consider Gordillo Reyes's argument that his plea was invalid.

## II. SENTENCE

Gordillo Reyes next argues that the trial court erred by imposing a no-contact condition that barred him from having contact with his daughter. Gordillo Reyes asserts that he has a constitutional right to have a relationship with his daughter, and that the State failed to demonstrate that restricting communication with his daughter is reasonably necessary to realize a compelling state interest. The State argues that the court did not err because Gordillo Reyes agreed to his sentence and the court was not advised of Gordillo Reyes's parenting interest.

7

The Sentencing Reform Act of 1981, chapter 9.94A RCW, authorizes the trial court to impose "crime-related prohibitions" as a condition of a sentence. RCW 9.94A.505(9). A "crime-related prohibition" prohibits "conduct that directly relates to the circumstances of the crime for which the offender has been convicted." RCW 9.94A.030(10). We review the imposition of community custody conditions for an abuse of discretion. *State v. Padilla*, 190 Wn.2d 672, 677, 416 P.3d 712 (2018). A trial court abuses its discretion by imposing an unconstitutional condition. *Padilla*, 190 Wn.2d at 677.

"More careful review of sentencing conditions is required where those conditions interfere with a fundamental constitutional right." *State v. Warren*, 165 Wn.2d 17, 32, 195 P.3d 940 (2008). The right to the care, custody, and companionship of one's children constitutes such a fundamental constitutional right. *In re Pers. Restraint of Rainey*, 168 Wn.2d 367, 374, 229 P.3d 686 (2010). "Sentencing courts can restrict fundamental parenting rights by conditioning a criminal sentence if the condition is reasonably necessary to further the State's compelling interest in preventing harm and protecting children." *State v. Corbett*, 158 Wn. App. 576, 598, 242 P.3d 52 (2010). These conditions must be "sensitively imposed" so that they are "reasonably necessary to accomplish the essential needs of the State and public order." *Warren*, 165 Wn.2d at 32. Any "crime-related prohibitions affecting fundamental rights must be narrowly drawn" and "[t]here must be no reasonable alternative way to achieve the State's interest." *Warren*, 165 Wn.2d at 34-35.

In *Rainey*, our Supreme Court struck down a lifetime no-contact order prohibiting Rainey from all contact with his child where the sentencing court did not articulate any reasonable necessity for the lifetime duration of that order. 168 Wn.2d at 381-82. Recognizing the "fact-

specific nature of the inquiry," the court remanded to the trial court for resentencing so that the court could "address the parameters of the no-contact order under the 'reasonably necessary' standard." *Rainey*, 168 Wn.2d at 382.

Here, the trial court ordered Gordillo Reyes to have no contact with minors. Because the no-contact condition implicates Gordillo Reyes's fundamental right to the care, custody, and companionship of his child who is a minor, "[t]he question is whether, on the facts of this case, prohibiting all contact with [his children], including indirect or supervised contact, is reasonably necessary to realize [a compelling State interest]." *Rainey*, 168 Wn.2d at 379. In order for the sentencing condition to be constitutionally valid, "[t]here must be no reasonable alternative way to achieve the State's interest." *Warren*, 165 Wn.2d at 34-35.

Here, in imposing the sentencing condition, the trial court set forth no explanation as to whether the no-contact condition was reasonably necessary to realize a compelling state interest. Moreover, although the State has a compelling interest in protecting children from harm, the State failed to demonstrate how prohibiting all contact between Gordillo Reyes and his child was reasonably necessary to effectuate that interest. The record is void of any information showing that the trial court considered Gordillo Reyes's fundamental right to parent his daughter when conditioning that Gordillo Reyes have no contact with minors. Thus, the record does not show that the court "sensitively imposed" the no-contact provision in a manner that was "reasonably necessary" to further the compelling interest of protecting children.

The State asserts that, at the time of sentencing, the court had not been advised that Gordillo Reyes had an ongoing parenting interest. The State asserts that had the court known that Gordillo Reyes had a parenting interest, the court's factual inquiry would "have been much

different" and the court would have been obliged to consider Gordillo Reyes rights to parent in context of the no contact with minors sentencing condition. Br. of Resp't at 11. The State's argument is not well taken. Prior to sentencing, Gordillo Reyes informed the court of his desire to have contact with his minor daughter and the court allowed Gordillo Reyes to have contact with his daughter. Accordingly, the trial court did have notice of Gordillo Reyes's parenting interest.

The State also argues that the trial court did not abuse its discretion because Gordillo Reyes agreed to his sentence. While Gordillo Reyes may have agreed to the State's recommendation that he have no contact with minors, the record lacks any information that Gordillo Reyes affirmatively agreed to have no contact with his minor daughter. The record does show however that prior to sentencing, the State had no issue with Gordillo Reyes having supervised contact with his daughter.

Gordillo Reyes never explicitly agreed to a sentencing condition prohibiting him from having any contact with his child. We therefore do not construe Gordillo Reyes agreement to the State's sentencing recommendation as being an affirmative agreement to having no contact with his daughter, especially where his fundamental right to parent must be considered.

Because the court's sentencing condition implicates Gordillo Reyes's fundamental constitutional right to parent, the trial court is required to determine whether the no-contact condition is reasonably necessary to further the compelling interest in preventing harm and protecting children.

Accordingly, we affirm Gordillo Reyes's guilty plea. However, we strike the sentencing condition prohibiting Gordillo Reyes from contact with all minors, and remand to the trial court

No. 50252-6-II

to consider whether prohibiting Gordillo Reyes from contact with his daughter is reasonably necessary under the principles discussed above.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Worswick, J.

We concur:

Maxa, C.J.

Melnick, J.

11