205 P.3d 123 (2009)
In the Matter of the Personal Restraint Petition of Anthony Lamount BRADLEY, Petitioner.
No. 81045-1.
Supreme Court of Washington, En Banc.
Argued September 11, 2008.
Decided April 16, 2009.
*125 Eric J. Nielsen, Dana M. Lind, Nielsen Broman & Koch PLLC, Seattle, WA, for Petitioner.
Ann Marie Summers, King County Prosecutor's Office, Seattle, WA, for Respondent.
STEPHENS, J.
¶ 1 Anthony Bradley pleaded guilty to simple possession of cocaine and possession with intent to deliver. As a result of a miscalculated offender score on the simple possession charge, Bradley was misinformed about the standard range associated with a plea of guilty on that charge. He now argues the misinformation rendered his plea involuntary. He seeks to withdraw both his simple possession plea and his possession with intent to deliver plea, claiming they were part of an indivisible "package deal." We conclude Bradley's plea was involuntary and that on the facts before us, his pleas were indivisible.

FACTS AND PROCEDURAL HISTORY
¶ 2 Bradley was apprehended in possession of cocaine on May 14, 2002. He was charged by information on May 17 with possession of cocaine with intent to deliver. Three months later, on August 16, 2002, he was again apprehended with cocaine and charged by information with possession of cocaine with intent to deliver. On September 26, 2002, the State amended the May 14 possession with intent charge to a simple possession charge. Bradley pleaded guilty to both charges that same day.
¶ 3 For the simple possession charge, Bradley's offender score put the standard range for the crime at 33-43 months. His offender score was eight and included one point for his juvenile convictions. For the intent to deliver charge, Bradley's offender score was nine, including two points for juvenile convictions, resulting in a standard range of 87-116 months. Bradley did not challenge the offender score calculations at the plea hearing. Pursuant to his plea agreement, the State agreed to recommend 43 months for simple possession and 87 months for possession with intent to deliver. The court imposed concurrent sentences in accordance with the State's recommendation. The judgment and sentence became final on October 17, 2002. Bradley did not appeal either conviction.
¶ 4 Sometime after the judgment and sentence became final, Bradley learned that his offender score for the simple possession charge had been miscalculated. His juvenile offenses should have "washed out" of his offender score because the possession crime was committed before June 13, 2002. State v. Varga, 151 Wash.2d 179, 86 P.3d 139 (2004); see RCW 9.94A.525(2). Bradley filed a personal restraint petition and, as part of the relief requested, sought to withdraw his plea to possession with intent to deliver. Division One of the Court of Appeals dismissed the petition on May 18, 2004, reasoning that Bradley's intent to deliver crime occurred after June 13, 2002. Division One did not address Bradley's simple possession charge.
¶ 5 In September 2007, Bradley filed this personal restraint petition, requesting to withdraw both of his pleas. Because the petition appeared to be successive, the Court of Appeals transferred it to this court for consideration. See In re Pers. Restraint of Perkins, 143 Wash.2d 261, 19 P.3d 1027 (2001). We retained the petition and appointed counsel for Bradley.
¶ 6 There appears to be no question that Bradley's petition is not successive because Division One did not address or resolve Bradley's arguments concerning his simple possession charge. State's Resp. to Pers. Restraint Pet. at 9 (claiming that any challenge to Bradley's charge for possession with intent to deliver is successive). Before this court, Bradley challenges the validity of his plea to simple possession, and, although he does not substantively challenge his intent to deliver plea, he seeks to withdraw both pleas on the ground that they were part of an indivisible "package deal." Suppl. Br. of Pet'r at 5.
¶ 7 The State concedes that Bradley's offender score for his simple possession charge was miscalculated. The State also appears to concede that the miscalculation resulted in a facial invalidity on Bradley's judgment and sentence, allowing him to avoid the one-year *126 time bar to filing a personal restraint petition. However, the State argues that the miscalculation affected only the sentencing range on Bradley's simple possession charge, which was not a direct consequence of his plea. The State asks that this case be remanded to the trial court so that the trial court may correct the offender score and standard range calculation reflected in the judgment and sentence. In the alternative, the State asks that Bradley be allowed to withdraw only his simple possession plea.

ANALYSIS

Involuntary Plea
¶ 8 "Due process requires that a defendant's guilty plea be knowing, voluntary, and intelligent." In re Pers. Restraint of Isadore, 151 Wash.2d 294, 297, 88 P.3d 390 (2004) (citing Boykin v. Alabama, 395 U.S. 238, 242, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969)). If a defendant is not apprised of a direct consequence of his plea, the plea is considered involuntary. State v. Ross, 129 Wash.2d 279, 284, 916 P.2d 405 (1996). A direct consequence is one that has a "definite, immediate and largely automatic effect on the range of the defendant's punishment." Id. The length of a sentence is a direct consequence of a guilty plea. State v. Mendoza, 157 Wash.2d 582, 590, 141 P.3d 49 (2006); State v. Moon, 108 Wash.App. 59, 63, 29 P.3d 734 (2001). Therefore, misinformation about the length of a sentence renders a plea involuntary, even where the correct sentence may be less than the erroneous sentence included in the plea. Mendoza, 157 Wash.2d at 591, 141 P.3d 49. This court does not require a defendant to show that the misinformation was material to the plea. Isadore, 151 Wash.2d at 302, 88 P.3d 390.
¶ 9 Here, Bradley was misinformed as to his offender score and the length of his sentence range for simple possession. Under Ross and Mendoza, it appears he was not apprised of a direct consequence of his plea. The State argues, however, that the sentence range was not a direct consequence of the plea. It points out that Bradley was ordered to serve a concurrent sentence and that his other conviction  possession with the intent to deliver  carried a higher standard range than simple possession. Thus, the State argues, the length of Bradley's sentence for simple possession was not a direct consequence of his plea because it had no practical effect on his sentence; he would have served the same sentence either way.
¶ 10 Relying upon State v. Oseguera Acevedo, 137 Wash.2d 179, 970 P.2d 299 (1999) (plurality opinion), the State argues that the particular facts of Bradley's case mean that there was no direct consequence to his simple possession plea. In Acevedo, the defendant was not informed about community custody placement, a direct consequence of a plea. A plurality of this court found that the defendant's impending deportation rendered community custody a nullity, and therefore it was not a material factor in his decision. Id. at 194, 970 P.2d 299. Just as Acevedo's deportation may have foreclosed his community custody term, the State argues that Bradley's concurrent sentences mean he would never have served the lower standard range about which he was misinformed. Suppl. Br. of Resp't at 10-11.
¶ 11 While the State accurately describes Acevedo, its reasoning has been eclipsed by later case law. See Isadore, 151 Wash.2d at 301-02, 88 P.3d 390. In Isadore, we held that a court will not speculate on the possible outcomes had the defendant been properly advised on the direct consequences of his plea. Id. at 302, 88 P.3d 390. Thus, we reject the State's invitation to consider the practical effect of Bradley's actions, as well as what the State itself might have done under other circumstances. This court cannot rewind the clock and put itself in the shoes of the prosecutor and the defendant as they entered into this plea agreement. As we observed in Isadore: "This hindsight task is one that appellate courts should not undertake. A reviewing court cannot determine with certainty how a defendant arrived at his personal decision to plead guilty, nor discern what weight a defendant gave to each factor relating to the decision." Id. This exercise is tantamount to examining the practical effects of information on a plea under the materiality test we rejected in Isadore. Moreover, we have already held that the length of a sentence is a direct consequence of a plea. *127 Mendoza, 157 Wash.2d at 590, 141 P.3d 49. We conclude that Bradley was not informed about a direct consequence of his plea, and the plea was therefore involuntary.

Remedy
¶ 12 Where a plea is entered into involuntarily, a defendant may choose to specifically enforce the agreement or to withdraw the plea. State v. Miller, 110 Wash.2d 528, 536, 756 P.2d 122 (1988). The prosecutor bears the burden of showing that the defendant's choice would result in an injustice. Id.
¶ 13 Here, the State does not argue that withdrawal of the simple possession plea would work an injustice. Therefore, as to the simple possession plea, withdrawal is appropriate. However, Bradley asks to withdraw both his simple possession plea and his plea for possession with intent to deliver.
¶ 14 This remedy is available to a defendant only where, as part of a "package deal," the defendant was correctly informed of the consequences of one charge, but not of another charge. State v. Turley, 149 Wash.2d 395, 399-401, 69 P.3d 338 (2003). A plea bargain is a "`package deal'" if the agreements as to the individual charges are indivisible from one another. See id. at 400, 69 P.3d 338. This court looks to objective manifestations of intent in determining whether a plea agreement was meant to be indivisible. Id. Where "pleas to multiple counts or charges were made at the same time, described in one document, and accepted in a single proceeding," the pleas are indivisible from one another. Id.[1]
¶ 15 We do not have before us the colloquy between the sentencing court and Bradley. We do not know to what extent the judge explained the pleas to Bradley, either separately or together. See id. (observing that in the sentencing hearing, the trial court "advised Turley of the consequences of his plea, but did not separate these consequences out based on the individual charge."). Thus, we are not faced with the same factual situation we reviewed in Turley, where we held a court must regard a plea agreement as indivisible. Turley does not purport to exclude other situations where we may find indivisibility, however. Id. Consistent with Turley, we examine the documents produced at Bradley's sentencing for objective manifestations of intent.
¶ 16 Bradley's charges were not described in one document, see id., but rather in separate documents linked to each charge. Suppl. Br. of Resp't, App. D ("Statement of Defendant on Plea of Guilty" for simple possession and "Plea Agreement" for simple possession); Suppl. Br. of Resp't, App. E ("Statement of Defendant on Plea of Guilty" for possession with intent to deliver and "Plea Agreement" for possession with intent to deliver). However, each of the separate documents referenced the other charge. In In re Personal Restraint of Shale, 160 Wash.2d 489, 158 P.3d 588 (2007), this court found a plea agreement was indivisible where the pleas were described in different documents but referenced in one another. Id. at 493-94, 158 P.3d 588. Shale is not entirely on point because there the defendant committed his separate crimes on the same day, id., while Bradley's crimes were committed approximately three months apart and charged in separate informations. And, as the State notes, the cross-references contained in the plea documents were mandatory to the terms of Bradley's concurrent sentences, under RCW 9.94A.589(1)(a). Suppl. Br. of Resp't at 14-15. A mandatory reference provides little evidence of intent to create *128 a package plea deal. Thus, the fact that the crimes are cross-referenced in the statements and the fact that the statements were entered on the same day does not alone establish an indivisible plea deal. Indeed, if this were sufficient, nearly every concurrent sentence entered on the same day would result in an indivisible plea deal.
¶ 17 The facts here go beyond this common situation, however, and evidence a "package deal." Significantly, the minute entries by the clerk indicate that the State amended the original possession with intent to deliver charge to simple possession on the day of sentencing on both charges. Suppl. Br. of Resp't, App. F. This amendment entered on the day of sentencing is an objective manifestation that the pleas were negotiated as part of a package deal. The timing confirms that in return for a plea to two charges, the State agreed to reduce one of the charges to simple possession and recommend concurrent sentencing. This fact aligns this case with those describing indivisible pleas and requires extending the remedy of rescission to both charges against Bradley.[2]

CONCLUSION
¶ 18 Bradley was misinformed about a direct consequence of his simple possession plea. Therefore, his plea was involuntary and he is entitled to withdraw it. Because this plea and his plea to possession with intent were entered as part of a package deal, his withdrawal necessarily includes both pleas. We grant the personal restraint petition and remand to the trial court for further proceedings consistent with this opinion.
WE CONCUR: CHARLES W. JOHNSON, MARY E. FAIRHURST, BARBARA A. MADSEN, TOM CHAMBERS, JJ.
OWENS, J. (concurring).
¶ 19 While I agree with the majority's holding today in large part, I write separately to outline a procedure I believe more completely resolves the issue of divisibility. Because we lack significant information about Anthony Bradley's plea agreement, the majority assumes too much in finding indivisibility in light of our rule set out in State v. Turley, 149 Wash.2d 395, 400, 69 P.3d 338 (2003). Instead of deciding Bradley's personal restraint petition (PRP) on the merits, I would order additional fact finding on remand and leave to the trial court the decision of whether to allow Bradley to withdraw both pleas consistent with the principles outlined in the majority opinion.
¶ 20 I agree with the majority that the divisibility inquiry is necessarily fact driven, but I disagree that we have enough facts on the record to find indivisibility. This court does not concern itself with unexpressed subjective intent, but does look to objective manifestations of intent to determine whether the parties (defendant and State) to the contract (plea agreement) intended the pleas to be indivisible. Id. A court "must treat a plea agreement as indivisible when pleas to multiple counts or charges were made at the same time, described in one document, and accepted in a single proceeding." Id. Today, the majority acknowledges that while Bradley's crimes did not take place at the same time, nor were they described in one document, it nevertheless finds indivisibility under Turley. Majority at 127-28.
¶ 21 We borrowed our rule for indivisibility of pleas from contract law, Turley, 149 Wash.2d at 400, 69 P.3d 338, and we should be wary of expanding the rule beyond its *129 current boundaries. The majority's opinion, though it recognizes the bounds of the rule, treats the elements of Turley as factors in a nonexclusive list of many that may exist to demonstrate intent. I would have this court adhere to the elements as established in Turley rather than stretch the rule in this way to fit a set of largely inferred facts.
¶ 22 In Turley, the court concluded that an evidentiary hearing was not necessary to determine intent because the record contained sufficient objective manifestations of intent. Id. The court held that "a trial court must treat a plea agreement as indivisible when pleas to multiple counts or charges were made at the same time, described in one document, and accepted in a single proceeding." Id. Today's holding puts Turley in a precarious position as its holding has changed from a clear, succinct rule to an amorphous factor-laden test potentially difficult for lower courts to interpret.
¶ 23 For example, the majority proceeds to infer the concurrence of pleas element despite the absence of a single document describing the pleas because of the timing of Bradley's plea amendment. Majority at 127-28. As logical as that inference might be, I think this court does not need to make such an inference. Rather, because of the lack of the colloquy between the sentencing court and Bradley, id. at 127, and the pro forma nature of the cross-references contained in the plea agreements, id. at 127-28, I find any manifestations of intent ambiguous. Thus, without more definition, I do not read the record as demonstrative of indivisible pleas.
¶ 24 Instead of deciding Bradley's case on the merits, I would transfer his PRP back to the superior court for a reference hearing to gather the necessary facts. This court has promulgated rules that provide a method to ascertain the necessary facts. RAP 16.11(b) sets out a procedure for appellate courts to resolve fact questions in review of PRPs. If the court lacks necessary facts to make a decision on the merits, it can transfer the petition to the superior court for a reference hearing. RAP 16.11(b). RAP 16.13 details that an appellate court can receive the record back from the superior court and make a decision on the merits. However, RAP 16.11(a) allows for a full delegation to the superior court for a decision on the merits. While the rules describe these procedures in terms of the Court of Appeals, this court certainly may employ these procedures in a PRP that the Court of Appeals has transferred to us pursuant to RCW 2.06.030.
¶ 25 The majority's interpretation of the facts surrounding Bradley's plea agreement is most likely accurate. However, we should be wary of this sort of "most likely" result when a method exists for extracting the necessary facts. I would transfer this case back to the superior court for a reference hearing on Bradley's plea agreement.
I CONCUR: RICHARD B. SANDERS, J.
ALEXANDER, C.J. (dissenting).
¶ 26 Although I agree with the majority that Anthony Bradley should be allowed to withdraw his plea of guilty to simple possession of cocaine, I do not agree that he should be permitted to withdraw his guilty plea to possession of cocaine with intent to deliver. I reach this conclusion because Bradley has not met his burden of showing that the two pleas were part of a so-called "package deal" and, thus, indivisible. Specifically, Bradley has failed to demonstrate "objective manifestations of intent" proving indivisibility. State v. Turley, 149 Wash.2d 395, 400, 69 P.3d 338 (2003) (citing Wilson Court Ltd. P'ship v. Tony Maroni's, Inc., 134 Wash.2d 692, 699, 952 P.2d 590 (1998)).
¶ 27 We borrowed our rule for indivisibility of pleas from contract law. See id. (citing Wilson Court, 134 Wash.2d at 699, 952 P.2d 590; Saletic v. Stamnes, 51 Wash.2d 696, 699, 321 P.2d 547 (1958)). Under normal contract law principles, the burden of proof is on the party seeking to change the prima facie character of the contract. Wilson Court, 134 Wash.2d at 700-01, 952 P.2d 590 (quoting Griffin v. Union Sav. & Trust Co., 86 Wash. 605, 610, 150 P. 1128 (1915)). Here, then, Bradley bears the burden of proving indivisibility because he seeks to change the prima facie character of the documents describing the charges against him.
¶ 28 The record before us confirms that, prima facie, Bradley's charges were not described *130 in one document and, thus, do not satisfy one of the three elements of indivisibility from Turley. Turley, 149 Wash.2d at 400, 69 P.3d 338.[1] Even under our holding in In re Personal Restraint of Shale, 160 Wash.2d 489, 493-94, 158 P.3d 588 (2007), the single document element is not met because Bradley's crimes were committed approximately three months apart and each was charged in a separate information.
¶ 29 Despite the absence of the single document element, the majority infers indivisibility based solely on the timing of Bradley's plea amendment. Majority at 127-28. In my judgment, however, the timing of Bradley's plea amendment, without more, is an insufficient manifestation of intent to change the prima facie character of Bradley's charges. I conclude, therefore, that Bradley failed to meet his burden of showing indivisibility.
¶ 30 In summary, it is my view that Bradley should not be allowed to withdraw his plea of guilty to possession of cocaine with intent to deliver. Consequently, the case should be remanded to the sentencing court in order to allow Bradley to withdraw his plea to simple possession of cocaine and to allow the court to revise Bradley's sentence to the extent it was affected by his plea to that charge.
I CONCUR: JAMES M. JOHNSON, J.
NOTES
[1] The concurrence and dissent believe Turley set forth "elements" that must be met in order to find indivisibility, specifically when pleas to multiple counts or charges are made at the same time, described in one document, and accepted in a single proceeding. Concurrence at 128; dissent at 130. Such a reading misapprehends the contract-based test set forth in Turley, which is that we must look to objective manifestations of intent on the face of the plea agreement in order to determine whether the parties intended multiple pleas to be indivisible. Turley, 149 Wash.2d at 400, 69 P.3d 338. Turley did not dictate the only possible set of facts that demonstrate an objective manifestation of intent to make a "package deal." If the Turley facts represented elements, this court would not have found in a later case that a defendant's pleas were indivisible even though described in separate documents. See In re Pers. Restraint of Shale, 160 Wash.2d 489, 493, 158 P.3d 588 (2007).
[2] The concurrence suggests that a fact-finding reference hearing under RAP 16.11(b) would be appropriate to determine the intent of the parties as to indivisibility at the time the pleas were entered. Concurrence at 128. This suggestion cannot be squared with our language in Turley: "[a]bsent objective indications to the contrary in the agreement itself, we will not look behind the agreement to attempt to determine divisibility. Such a determination, after the fact, would not serve the plea negotiation process." 149 Wash.2d at 400, 69 P.3d 338. In Turley, we rejected outright the State's request for an after-the-fact evidentiary hearing because it would undermine the integrity of the plea negotiation process. Moreover, such a hearing would also be at odds with our reasoning in Isadore, in which we cautioned courts against engaging in a hindsight inquiry into the motivations of parties to a plea agreement outside the four corners of the agreement. 151 Wash.2d at 302, 88 P.3d 390. Here, we need not and should not require a reference hearing; the documentary record itself evidences an intent to create a package deal.
[1] "[A] trial court must treat a plea agreement as indivisible when pleas to multiple counts or charges were made at the same time, described in one document, and accepted in a single proceeding." Turley, 149 Wash.2d at 400, 69 P.3d 338.