254 P.3d 899 (2011)
161 Wash.App. 329
In re Personal Restraint Petition of Daniel STOCKWELL, Petitioner.
No. 37230-4-II.
Court of Appeals of Washington, Division 2.
April 19, 2011.
*900 Neil Martin Fox, Law Office of Neil Fox, PLLC, Seattle, WA, for Petitioner.
Kathleen Proctor, Pierce County Prosecuting Atty. Ofc., Tacoma, WA, for Respondent.
ARMSTRONG, P.J.
¶ 1 Daniel Stockwell seeks to withdraw his guilty plea to a 1986 first degree statutory rape conviction, arguing (1) his judgment and sentence is facially invalid because it contains the wrong maximum term, (2) his personal restraint petition (PRP) is not time barred because the Department of Corrections (DOC) did not inform him of the one year limitation, and (3) he should be allowed to withdraw his guilty plea because he was not informed of the true maximum sentence. Because Stockwell has not shown that he was actually prejudiced by the misstated maximum sentence, we dismiss his petition.

FACTS
¶ 2 In 1985, Stockwell was convicted of indecent liberties, given a Special Sex Offender Sentencing Alternative (SSOSA), and required to participate in outpatient treatment. During treatment, Stockwell admitted to having sexual contact with a minor. In response, the State charged Stockwell with first degree statutory rape. In 1986, Stockwell pleaded guilty. Because Stockwell had voluntarily revealed his offense and was doing well in treatment, the State and trial court agreed to give him another SSOSA. Stockwell's guilty plea form stated that the maximum sentence was "twenty (20) years" when the actual maximum was life. Personal Restraint Petition (PRP), Ex. 2 at 1. His judgment and sentence also identified the maximum term as "20 years." PRP, Ex. 3 at 2. Stockwell did not appeal the conviction or sentence from his 1986 guilty plea.
¶ 3 Stockwell served his sentence and was discharged from confinement and DOC supervision in October 1989. While Stockwell was on supervision, the legislature enacted a time-bar statute limiting collateral petitions, with a few exceptions, to those filed within one year of the judgment and sentence. RCW 10.73.090. The legislature required the DOC to attempt to notify persons subject to DOC supervision of the time-bar statute. RCW 10.73.120.
¶ 4 In 2004, Stockwell was convicted of first degree child molestation and first degree attempted child molestation. The trial court found that he was a persistent offender, counting the 1986 guilty plea conviction, and sentenced him to life without the possibility of parole.
¶ 5 In 2007, Stockwell filed this PRP, arguing his guilty plea was invalid and the one-year time bar of RCW 10.73.090(1) did not apply because (1) the DOC did not make a good faith effort to notify him of the time bar and (2) his judgment and sentence is facially invalid because it contains the wrong maximum penalty. We dismissed the PRP as untimely. The Supreme Court accepted review and remanded the case back to us to reconsider in light of In re Personal Restraint of McKiearnan, 165 Wash.2d 777, 203 P.3d 375 (2009).[1]

*901 ANALYSIS

I. Time-Bar Statute Notice Requirement
¶ 6 On July 23, 1989, three years after Stockwell's judgment and sentence were final,[2] the legislature amended chapter 10.73 RCW to provide: "No petition or motion for collateral attack on a judgment and sentence in a criminal case may be filed more than one year after the judgment becomes final if the judgment and sentence is valid on its face and was rendered by a court of competent jurisdiction." RCW 10.73.090(1); Laws of 1989, ch. 395 § 1. The legislature also required the DOC to notify persons subject to the new limitation:
As soon as practicable after July 23, 1989, the department of corrections shall attempt to advise the following persons of the time limit specified in RCW 10.73.090 and 10.73.100: Every person who, on July 23, 1989, is serving a term of incarceration, probation, parole, or community supervision pursuant to conviction of a felony.
RCW 10.73.120. Thus, the time bar applies to Stockwell only if the DOC can show that it attempted to notify him of it. See RCW 10.73.120; In re Pers. Restraint of Runyan, 121 Wash.2d 432, 451, 853 P.2d 424 (1993); In re Pers. Restraint of Vega, 118 Wash.2d 449, 451, 823 P.2d 1111 (1992).
¶ 7 The State argues that Stockwell received notice because the DOC posted notice of the new statute at all community corrections offices and work release centers. Such notice satisfies the DOC's statutory duty to give notice to those persons still under DOC supervision. Runyan, 121 Wash.2d at 437-38, 853 P.2d 424. In Runyan, our Supreme Court rejected the petitioners' argument that they never received actual notice of the time-bar statute, reasoning that RCW 10.73.120 does not require actual notice, only "[a] good faith effort to advise." Runyan, 121 Wash.2d at 452, 853 P.2d 424. The court concluded that posting notices was a good faith attempt to provide notice. Runyan, 121 Wash.2d at 436, 853 P.2d 424.
¶ 8 But Stockwell was discharged from DOC supervision in October 1989, and the DOC posted notice in December 1989. Although Stockwell was still under DOC supervision in July 1989, and was, therefore, a person to whom the DOC had to give notice, he was not under supervision in December 1989 when the DOC posted the notice. Because the DOC could have had no reasonable expectation that the postings would reach inmates released from its supervision, the postings were not a good faith effort to notify Stockwell of the new time limit on PRPs. The DOC has offered no evidence that it made any other effort to notify discharged inmates of the new statutory time bar. Where the DOC has made no effort to notify a particular individual, the time bar does not apply.[3]Vega, 118 Wash.2d at 451, 823 P.2d 1111. Accordingly, we address the merits of Stockwell's petition.

II. Guilty Plea
¶ 9 Stockwell contends that he is entitled to withdraw his guilty plea because he was misinformed about the statutory maximum term. Although Stockwell's argument would succeed on direct appeal, he cannot meet the heightened PRP standard of establishing actual prejudice.
¶ 10 A PRP is not a substitute for an appeal. In re Pers. Restraint of Hagler, 97 Wash.2d 818, 823-24, 650 P.2d 1103 (1982). A personal restraint petitioner must prove either a constitutional error that caused actual prejudice or a nonconstitutional error that caused a miscarriage of justice. In re Pers. Restraint of Cook, 114 Wash.2d 802, 813, 792 P.2d 506 (1990). If a petitioner claims a constitutional error but fails to make a prima facie showing of actual prejudice, we must dismiss the petition. In re Pers. Restraint *902 of Hews, 99 Wash.2d 80, 88, 660 P.2d 263 (1983).
¶ 11 A defendant must be informed of the statutory maximum sentence for a charged crime because it is a direct consequence of his guilty plea. State v. Weyrich, 163 Wash.2d 554, 557, 182 P.3d 965 (2008). In Weyrich, the defendant was misinformed that the statutory maximum for the charged crimes was 5 years, rather than 10 years. Weyrich, 163 Wash.2d at 556, 182 P.3d 965. Because the misinformation concerned a direct consequence of his guilty plea, the plea was not voluntary and the defendant was entitled to withdraw it. Weyrich, 163 Wash.2d at 557, 182 P.3d 965. Here, Stockwell was misinformed that the statutory maximum sentence for the charged crime was 20 years, rather than life. This misinformation concerned a direct consequence of his guilty plea. Weyrich, 163 Wash.2d at 557, 182 P.3d 965. Thus, Stockwell has shown a constitutional error.
¶ 12 But Stockwell fails to explain how he was actually prejudiced by the error. Instead of demonstrating actual prejudice, Stockwell argues that we must presume prejudice, relying on Weyrich, State v. Mendoza, 157 Wash.2d 582, 141 P.3d 49 (2006), and In re Personal Restraint of Isadore, 151 Wash.2d 294, 88 P.3d 390 (2004). Stockwell correctly contends that Weyrich and Mendoza held that a defendant seeking to withdraw a guilty plea need not establish a causal link between the misinformation and his decision to plead guilty; nor did either case discuss actual prejudice to the defendant. See Weyrich, 163 Wash.2d at 557, 182 P.3d 965; Mendoza, 157 Wash.2d at 590-91, 141 P.3d 49. But both Weyrich and Mendoza were direct appeals, not PRPs.
¶ 13 Isadore was a PRP, but it is distinguishable. In Isadore, the State attempted to add a community custody term to Isadore's sentence after the time for a direct appeal had passed. Isadore, 151 Wash.2d at 299-300, 88 P.3d 390. Because Isadore did not have an opportunity to challenge that decision on direct appeal, the court did not apply the heightened PRP standards: "Instead, the petitioner need show only that he is restrained ... and that the restraint is unlawful." Isadore, 151 Wash.2d at 299, 88 P.3d 390. Consistent with this standard of review, the court ultimately concluded that Isadore's plea was involuntary because he was misinformed about community custody, a direct consequence of the plea. Isadore, 151 Wash.2d at 302, 88 P.3d 390. Because his plea was involuntary, his restraint was unlawful and the court granted his petition. Isadore, 151 Wash.2d at 302, 88 P.3d 390.
¶ 14 Although its holding is consistent with direct appeal standards, the Isadore court also stated, in dicta, that "even if Isadore were required to meet the standard personal restraint petition requirements, he has done so in this petition." Isadore, 151 Wash.2d at 300, 88 P.3d 390. The court then analyzed whether a defendant seeking to withdraw a guilty plea due to misinformation about direct consequences must show that the misinformation was material to his decision to plead guilty. Isadore, 151 Wash.2d at 300-02, 88 P.3d 390. The court's analysis was based on direct appeal casesState v. Acevedo, 137 Wash.2d 179, 970 P.2d 299 (1999), State v. Ross, 129 Wash.2d 279, 916 P.2d 405 (1996), and State v. Walsh, 143 Wash.2d 1, 17 P.3d 591 (2001)and the court never referred back to the heightened PRP standards or discussed what actual prejudice Isadore had suffered. Isadore, 151 Wash.2d at 300-02, 88 P.3d 390.
¶ 15 Our Supreme Court recently relied on Isadore in In re Personal Restraint of Bradley, 165 Wash.2d 934, 940-41, 205 P.3d 123 (2009), holding that a personal restraint petitioner could withdraw his plea simply by showing he was misadvised as to a direct consequence. Bradley had pleaded guilty to possessing cocaine and possessing cocaine with intent to deliver, and the sentencing court imposed concurrent sentences. Bradley, 165 Wash.2d at 937-38, 205 P.3d 123. After Bradley learned that the court had miscalculated his offender score for the simple possession conviction, he filed a PRP seeking to withdraw both guilty pleas. Bradley, 165 Wash.2d at 938, 205 P.3d 123. Because Bradley's concurrent sentence was longer than the miscalculated sentence, the State argued that the miscalculated sentence "was not a direct consequence of his plea *903 because it had no practical effect on his sentence; he would have served the same sentence either way." Bradley, 165 Wash.2d at 940, 205 P.3d 123. The court rejected this argument, noting that the State relied on Acevedo, which had been "eclipsed" by Isadore. Bradley, 165 Wash.2d at 940, 205 P.3d 123. Without discussing PRP standards or the defendant's burden of showing actual prejudice, the court held: "Bradley was misinformed about a direct consequence of his simple possession plea. Therefore, his plea was involuntary and he is entitled to withdraw it." Bradley, 165 Wash.2d at 944, 205 P.3d 123.
¶ 16 Thus, neither Isadore nor Bradley discussed a defendant's heightened PRP burden of establishing actual prejudice. Instead, both courts appear to have applied the direct appeal test when determining whether a petitioner may withdraw a plea rendered involuntary by misinformation. See Bradley, 165 Wash.2d at 940, 205 P.3d 123; Isadore, 151 Wash.2d at 300-02, 88 P.3d 390. We could read these cases as implicitly holding that (1) we should presume prejudice whenever a PRP defendant demonstrates that his plea was involuntary, or (2) the plea itself was the actual prejudice. But we question whether our Supreme Court would abandon by implication the actual prejudice standard required in a PRP.[4] Nor do we believe the Supreme Court intended to hold that the plea itself was the actual prejudice.
¶ 17 First, it is apparent that the defendants in Isadore and Bradley both suffered actual prejudice beyond merely pleading guilty without being properly informed of all direct consequences of the plea. In Isadore, the State sought to impose an additional mandatory term of community custody that neither the court nor counsel advised Isadore of before he pleaded guilty. Thus, the misinformation would have resulted in actual prejudice to Isadore in the form of a longer sentence. In Bradley, the sentencing court incorrectly calculated Bradley's offender score and imposed a concurrent sentence that exceeded what his actual offender score would have supported. Although the wrongful sentence was masked by the longer, concurrent sentence, a wrongful sentence still harms a defendant and results in a miscarriage of justice. See In re Pers. Restraint Petition of Johnson, 131 Wash.2d 558, 933 P.2d 1019 (1997) (holding incorrect calculation of offender score is a fundamental defect in a sentence resulting in a miscarriage of justice and requiring relief under a PRP). Additionally, if the longer sentence was overturned, Bradley would still have to complete the wrongful lesser sentence.
¶ 18 Second, in Isadore and Bradley, the State framed the issues as whether the pleas were involuntary, not whether the misinformation resulted in actual prejudice to the defendants. In Isadore, the State relied on Acevedo to argue that a defendant must show the misinformation was material to his decision to plead guilty to prove that the plea was involuntary. Isadore, 151 Wash.2d at 300, 88 P.3d 390. The court rejected this argument, holding that a defendant does not have to show materiality. Isadore, 151 Wash.2d at 302, 88 P.3d 390. In Bradley, the State again relied on Acevedo to argue that Bradley's wrongful lesser sentence was not a direct consequence of his plea because it was subsumed within the longer sentence. Bradley, 165 Wash.2d at 940, 205 P.3d 123. The court rejected this argument, relying on Isadore. Bradley, 165 Wash.2d at 940, 205 P.3d 123. Thus, Isadore and Bradley focused on whether the defendants' pleas were involuntary, not whether the defendants suffered actual prejudice.
¶ 19 While Isadore and Bradley establish that a personal restraint petitioner does not have to show that the misinformation was material to his decision to plead guilty, whether the misinformation caused actual harm, such as a longer sentence, is a different question. For example, in In re Personal Restraint of Fawcett, 147 Wash.2d 298, 301, 53 P.3d 972 (2002), a personal restraint petitioner sought to withdraw a guilty plea because the plea form misstated the minimum *904 community custody term as one year when it was actually two years. Our Supreme Court considered whether the misinformation actually prejudiced the petitioner, observing: "whether Fawcett would have pleaded guilty to first degree child molestation knowing he would be sentenced to a two year community placement term is irrelevant to whether he was actually and substantially prejudiced by the imposition of the two year community placement term." Fawcett, 147 Wash.2d at 302, 53 P.3d 972. Because Fawcett failed to demonstrate he was actually prejudiced by the misinformation, the court denied his petition.[5]Fawcett, 147 Wash.2d at 303, 53 P.3d 972.
¶ 20 For these reasons, we are unwilling to read Isadore and Bradley as implicitly abandoning the actual prejudice standard in PRPs claiming involuntary guilty pleas. See Fawcett, 147 Wash.2d at 301-02, 53 P.3d 972; Hews, 99 Wash.2d at 88, 660 P.2d 263. We are also unwilling to read these cases as holding that the involuntary plea itself constitutes actual prejudice. Neither Isadore nor Bradley expressly held that a plea rendered involuntary due to misinformation constitutes actual prejudice. And, as the facts of this case demonstrate, misinformation does not necessarily result in actual prejudice to a defendant. Here, Stockwell does not claim he suffered actual prejudice from the misstated lower maximum sentence in his plea form, and the record contains no hint of such harm. Stockwell received a favorable plea bargain, he served no prison time for the rape conviction, and he was allowed to continue with his SSOSA. He then finished treatment, fulfilled his community custody conditions, and was discharged from the DOC's supervision 21 years ago.
¶ 21 Finally, the State correctly contends that it is bound by the misstated maximum term of 20 years. Where a defendant erroneously receives a lesser sentence, without any fraud on his part or notice that the sentence might be increased, the State cannot later seek a longer, correct sentence because the defendant has an expectation of finality in the sentence once he has served it. State v. Hardesty, 129 Wash.2d 303, 312-14, 915 P.2d 1080 (1996). Here, the State concedes that it is now bound by the misstated 20-year maximum term. Thus, the misstated maximum term is now the actual maximum term for Stockwell's 1986 statutory rape conviction and is no longer a misstatement. Because Stockwell has not shown actual prejudice, we dismiss the petition.
We concur: HUNT and VAN DEREN, JJ.
NOTES
[1] McKiearnan pleaded guilty to first degree robbery and both the plea form and the judgment and sentence misstated the maximum sentence as 20 years to life imprisonment, when the maximum was simply life. McKiearnan, 165 Wash.2d at 779-80, 203 P.3d 375. McKiearnan filed a PRP seeking to withdraw his plea. He sought to overcome the one-year time bar under RCW 10.73.090(1) by arguing that the judgment and sentence was facially invalid. McKiearnan, 165 Wash.2d at 780-81, 203 P.3d 375. The Supreme Court rejected this argument, holding: "To be facially invalid, a judgment and sentence requires a more substantial defect than a technical misstatement that had no actual effect on the rights of the petitioner." McKiearnan, 165 Wash.2d at 783, 203 P.3d 375. Because we hold that the time-bar requirement does not apply to Stockwell's petition, we do not need to address whether his judgment and sentence is facially invalid due to the misstated maximum sentence.
[2] If the defendant does not file an appeal, a judgment and sentence is final on the date it is filed with the clerk of the trial court. RCW 10.73.090(3)(a).
[3] Stockwell's 2004 judgment and sentence gave him notice that any collateral attack on "this judgment and sentence ... must be filed within one year." Resp't Responsive Br., App. G at 6 (emphasis added). This is insufficient notice that his 1986 judgment was also subject to the one-year time limit.
[4] We also note that Isadore set forth the actual prejudice standard in beginning of its analysis, explaining that Isadore did not have to meet it because he never had the opportunity to raise his issues on direct appeal. Isadore, 151 Wash.2d at 298-99, 88 P.3d 390. This discussion was unnecessary if the court intended to abandon the actual prejudice standard.
[5] The sentencing court had imposed a SSOSA and two year community placement term. But Fawcett violated the conditions of community placement two months into the term and the court revoked the SSOSA and imposed a standard-range sentence instead. The court held: "Because Fawcett would be in precisely the same situation even if he had received a one year community placement term, we hold that Fawcett was not actually and substantially prejudiced by the imposition of the two year community placement term." Fawcett, 147 Wash.2d at 303, 53 P.3d 972.