# IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

STATE OF WASHINGTON,

Respondent,

v.

CORY LAMONT THOMAS,

Appellant.

No. 68220-2-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: July 1, 2013

LEACH, C.J. — Cory Thomas appeals his conviction for burglary in the second degree. He challenges the sufficiency of the evidence. In a statement of additional grounds, Thomas alleges that the State filed a deficient information; that the court improperly denied his motion for a bill of particulars; prosecutorial vindictiveness; denial of his right to counsel; ineffective assistance of counsel; violations of the court's witness exclusion ruling and the confrontation clause; that the trial court gave an improper jury instruction; and that the State improperly argued an aggravating factor at sentencing. Because, viewing the evidence in the light most favorable to the State, a rational trier of fact could have found the essential elements of second degree burglary beyond a reasonable doubt and Thomas's remaining claims are meritless, we affirm.

Background

At approximately 2:06 a.m. on May 12, 2009, police officers responded to an alarm at the Edmonds Smoke Shop. When they arrived, they found the front door locked but the door's glass broken. Inside, an A-frame sign lay on the floor behind the door. The officers found a rock on the carpet inside the store. They found no sign of forced entry through the other entrance, the back door. The officers also observed cut wires in front of the building and wires disconnected from an electrical box serving the building.

One officer reported that when he arrived, he saw that "[n]othing is overturned. Nothing is laying [sic] on the floor ransacked. Nothing appears damaged. Things are in neat stacks still. In that sense, it appears orderly." This officer noticed a crooked cigarette pack on a shelf and found "a big empty void" behind it. Although the store's owner, Muhammad Anwar, initially reported no stolen merchandise, he later estimated that he could not account for 82 cartons of cigarettes and two or three boxes of cigars. He also told police officers that the A-frame sign usually stood upright inside the door and that he straightened up the merchandise before closing the store.

As they drove to work between 2:00 a.m. and 3:00 a.m. that day, Shane Crum and Kevin Stone saw two men cross the street and enter the passenger side of a silver car parked in a bowling alley parking lot. The silver car traveled down the street, turned into a grocery store parking lot, pulled into the back entrance, and traveled back to the bowling alley parking lot. When police arrived

and asked if Crum saw anyone in the area of the smoke shop, Crum pointed out this car.

Police officers followed the silver car and stopped it. They questioned the driver, Thomas, as well as the two passengers. With a warrant, police officers searched the car. They found three masks, a hat, gloves, and a bandana. They also found a portable light in the driver's side door and two Tupperware tubs in the back seat. Additionally, the officers found a screwdriver, a wrench, and five sockets in the trunk. They found no evidence of cigarettes or cigarette packaging in the car.

The State charged Thomas with second degree burglary. A jury convicted him as charged. Thomas appeals.

Analysis

Sufficiency of the Evidence

Thomas first claims that insufficient evidence supported his conviction. Sufficient evidence supports a conviction only if, when viewed in the light most favorable to the State, any rational trier of fact could have found the elements of the crime beyond a reasonable doubt.[1] For this analysis, "[c]ircumstantial evidence is just as reliable as direct evidence."[2]

---

[1] State v. Maupin, 63 Wn. App. 887, 892, 822 P.2d 355 (1992) (citing State v. Green, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980)).

[2] State v. Frawley, 140 Wn. App. 713, 721-22, 167 P.3d 593 (2007) (citing State v. Myers, 133 Wn.2d 26, 38, 941 P.2d 1102 (1997)), review granted, 176 Wn.2d 1030 (2013).

Under former RCW 9A.52.030 (1989), "[a] person is guilty of burglary in the second degree if, with intent to commit a crime against a person or property therein, he or she enters or remains unlawfully in a building other than a vehicle or a dwelling." Thomas argues that the State "did not prove beyond a reasonable doubt that anyone entered the store."

Thomas challenges only Mr. Anwar's testimony that Mr. Anwar could not account for 82 cartons of cigarettes and two or three boxes of cigars. Thomas offers a variety of reasons for questioning Mr. Anwar's credibility, including the fact that the trial court denied the State's request for restitution for the missing merchandise. But even though police officers found no evidence of the missing merchandise, "[c]redibility determinations are for the trier of fact and are not subject to review."[3]

The evidence shows that someone broke and removed all of the glass from the store's front door and knocked over the A-frame sign onto the floor. Additionally, the alarm tripped at the back door, suggesting that someone entered through the front door, without setting off an alarm, and exited through the back. Further, although Mr. Anwar testified that he straightened up the merchandise before closing the store the previous evening, police found a "big empty void" on a store shelf behind a crooked package. Moreover, witnesses

---

[3] State v. Mines, 163 Wn.2d 387, 391, 179 P.3d 835 (2008) (citing State v. Thomas, 150 Wn.2d 821, 874, 83 P.3d 970 (2004)).

saw two men run from the store's vicinity and get into a car that Thomas was driving.

The fact that the court denied the State's request for restitution is not relevant to whether sufficient evidence supported Thomas's conviction. At sentencing, Thomas argued that he should not pay restitution for the missing merchandise because he did not personally take it. The court treated the issue as a legal argument that did not require a factual determination. The trial court maintains considerable discretion in determining restitution,[4] and nothing in the record indicates a factual determination that no burglary occurred. Because the jury, not the court, evaluates a witness's credibility and Thomas fails to establish that insufficient evidence supported the jury's determination that he entered the store, we reject his claim.

Deficient Information

In a statement of additional grounds, Thomas alleges that the original information, in which the State charged him with attempted second degree burglary under RCW 9A.28.020(1) and RCW 9A.52.030, "was deficient insofar as it failed to state what 'specific' crime the defendants intended to commit while within the building or dwelling at question." To give notice to an accused of the

---

[4] State v. Kinneman, 155 Wn.2d 272, 282, 119 P.3d 350 (2005) (citing RCW 9.94A.753).

nature and cause of the accusation against him, the charging document must include all essential elements of the crime.[5]

The State's original information, filed November 29, 2010, charged Thomas with attempted second degree burglary. The State tried him on the third amended information, however, which charged him with second degree burglary. Any purported defect in the original information is not germane. Under CrR 2.1(2)(d), the court may permit the prosecutor to amend the information at any time before the verdict or finding if the amendment will not substantially prejudice the defendant. Because Thomas does not challenge the third amended information, he fails to establish that he did not have proper notice of the nature and cause of the accusation against him.

Denial of Bill of Particulars

Thomas also claims that the trial court erroneously denied his motion for a bill of particulars under CrR 2.1(2)(c). We review a trial court's ruling on a bill of particulars for abuse of discretion.[6]

Thomas's motion related only to the attempted second degree burglary charge in the original information. We need not address this issue. As previously noted, the State tried Thomas on the third amended information, and

---

[5] State v. Berglund, 65 Wn. App. 648, 650, 829 P.2d 247 (1992) (citing State v. Leach, 113 Wn.2d 679, 689, 782 P.2d 552 (1989); State v. Kjorsvik, 117 Wn.2d 93, 97, 812 P.2d 86 (1991)).

[6] State v. Allen, 116 Wn. App. 454, 460, 66 P.3d 653 (2003) (citing State v. Noltie, 116 Wn.2d 831, 844, 809 P.2d 190 (1991)).

Thomas does not challenge the third amended information. Thus, Thomas's argument lacks merit.

Prosecutorial Vindictiveness

For his fourth claim, Thomas contends that amending the information to charge him with second degree burglary instead of attempted second degree burglary constituted prosecutorial vindictiveness. He asserts that "the facts of this case are one of those clear and undisputable cases of actual vindictiveness and of a defendant being effectively punished for his lawful exercise of a constitutional right, that being a challenge to the charging information and a request for a bill of particulars." We reject Thomas's arguments.

Prosecutorial vindictiveness occurs when the State charges the defendant with a more serious crime "'in retaliation for a defendant's lawful exercise of a procedural right.'"[7] The Sentencing Reform Act of 1981[8] gives prosecutors great discretion in determining which charges to file against a defendant.[9] An initial charging decision does not, however, end prosecutorial discretion.[10] "A prosecutor may increase an initial charge when a fully informed and represented defendant refuses to plead guilty to a lesser charge."[11]

---

[7] State v. Fryer, 36 Wn. App. 312, 317, 673 P.2d 881 (1983) (quoting State v. McKenzie, 31 Wn. App. 450, 452, 642 P.2d 760 (1981)).

[8] Ch. 9.94A RCW.

[9] State v. Lewis, 115 Wn.2d 294, 299, 797 P.2d 1141 (1990).

[10] State v. Bonisisio, 92 Wn. App. 783, 790, 964 P.2d 1222 (1998) (citing State v. Lee, 69 Wn. App. 31, 37, 847 P.2d 25 (1993)).

[11] Bonisisio, 92 Wn. App. at 790 (citing Lee, 69 Wn. App. at 36; United States v. Goodwin, 457 U.S. 368, 378-80, 102 S. Ct. 2485, 73 L. Ed. 2d 74 (1982)).

Again, under CrR 2.1(2)(d), the court may permit the prosecutor to amend the information. In a pretrial setting, a defendant bears the burden of proving either "'(1) actual vindictiveness, or (2) a realistic likelihood of vindictiveness which will give rise to a presumption of vindictiveness.'"[12] If the defendant makes this showing, the State must provide legitimate, articulable, and objective reasons for its actions.[13] "If the only showing of vindictiveness is the addition before trial of new charges for which the State believes there is sufficient evidence to support a conviction, constitutionally impermissible conduct has not been shown."[14]

Here, in response to Thomas's objection to the amendment, the prosecutor explained, "Regarding the attempted second degree burglary, that was filed as the lesser offense in order to give him an opportunity to plead guilty to a lesser offense. . . . [W]e're just amending it up to the full burglary for trial. That was not in response to his Bill of Particulars." The prosecutor also noted, "[W]e have provided discovery to counsel, we've provided all the materials that would list out the particulars of a Bill of Particulars, and provided information as to this offense."

Thomas offers no basis to conclude that the prosecutor amended the information in retaliation for his challenge to the original information or his

---

[12] Bonisisio, 92 Wn. App. at 791 (internal quotation marks omitted) (quoting United States v. Wall, 37 F.3d 1443, 1447 (10th Cir.1994)).

[13] Bonisisio, 92 Wn. App. at 791 (quoting Wall, 37 F.3d at 1447).

[14] Fryer, 36 Wn. App. at 317 (citing State v. Penn, 32 Wn. App. 911, 914, 650 P.2d 1111 (1982)).

request for a bill of particulars. The record shows that the State properly offered Thomas a chance to plead guilty to the lesser charge and also believed that sufficient evidence supported the higher charge. Because Thomas fails to show constitutionally impermissible conduct, we deny his claim.

Denial of Right to Counsel

Thomas also alleges that the trial court denied his right to counsel at the trial readiness hearing. Under the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington State Constitution, an indigent person has a right to representation by appointed counsel at all critical stages of a criminal proceeding.[15] "'A stage is critical if it presents a possibility of prejudice to the defendant.'"[16]

Because Thomas's appointed counsel was unavailable to attend the trial readiness hearing, a substitute attorney represented Thomas at the hearing. Thomas objected to this representation, asserting, "I don't know who he is. He hasn't filed a notice of appearance or anything." In response to Thomas's arguments, the court explained, "All we're doing is assigning it out for trial. Nothing is going to happen today. I'm just getting you to a judge to start trial." A defendant does not have an absolute right under the Sixth Amendment to

---

[15] State v. Hawkins, 164 Wn. App. 705, 714-15, 265 P.3d 185 (2011) (citing State v. Valentine, 132 Wn.2d 1, 16, 935 P.2d 1294 (1997)), review denied, 173 Wn.2d 1025 (2012).

[16] Hawkins, 164 Wn. App. at 715 (quoting State v. Harell, 80 Wn. App. 802, 804, 911 P.2d 1034 (1996)).

counsel of his or her choice.[17] The essential aim of the Sixth Amendment is "to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers."[18] Thomas shows no prejudice from different counsel appearing at the trial readiness hearing. Therefore, we hold that the court did not deny Thomas the right to counsel.

## Ineffective Assistance of Counsel

Thomas argues that defense counsel was ineffective because he "fail[ed] to notify the defendant of his standard range and of his direct consequences of proceeding to trial." He claims that this was "error of a constitutional magnitude affecting the right to a fair trial and the right to be properly informed so as to make intelligent and informed decisions regarding his choice to proceed to trial." Thomas also claims that counsel was ineffective for failing to introduce evidence to challenge an officer's report that the officer saw glass in the Tupperware tubs in the back of Thomas's car. We hold that Thomas received effective assistance of counsel.

Claims of ineffective assistance of counsel are mixed questions of law and fact, which we review de novo.[19] To prevail, a defendant must show (1) that counsel's performance fell below an objective standard of reasonableness based

---

[17] State v. Stenson, 132 Wn.2d 668, 733, 940 P.2d 1239 (1997) (citing State v. DeWeese, 117 Wn.2d 369, 375-76, 816 P.2d 1 (1991)).

[18] Wheat v. United States, 486 U.S. 153, 159, 108 S. Ct. 1692, 100 L. Ed. 2d 140 (1988).

[19] In re Pers. Restraint of Fleming, 142 Wn.2d 853, 865, 16 P.3d 610 (2001).

on a consideration of all the circumstances and (2) that the deficient performance prejudiced the trial.[20]   The reasonableness inquiry presumes effective representation and requires the defendant to show the absence of legitimate strategic or tactical reasons for the challenged conduct.[21]  To show prejudice, the defendant must prove that but for the deficient performance, there is a reasonable probability that the outcome would have been different.[22]

To satisfy due process, a defendant's guilty plea must be knowing, intelligent, and voluntary.[23]  A plea is not voluntary if the defendant is not informed of the direct consequences of the plea, including the sentencing implications.[24]  Thomas pleaded not guilty.  Even if counsel had a duty to inform Thomas of the consequences that he faced, the trial court concluded during a pretrial hearing, "[T]here's been a detailed discussion between Mr. Thomas and Mr. Pandher as to what the standard range and what he is facing is. . . . [T]here is no inadequacy of counsel."  Because the record does not support Thomas's claim that he did not know the consequences of proceeding to trial, we reject it.

Thomas also contends that counsel was ineffective for refusing to introduce evidence that one officer did not see any glass in the Tupperware tubs

---

[20] State v. Nichols, 161 Wn.2d 1, 8, 162 P.3d 1122 (2007).

[21] State v. McFarland, 127 Wn.2d 322, 336, 899 P.2d 1251 (1995).

[22] In re Pers. Restraint of Pirtle, 136 Wn.2d 467, 487, 965 P.2d 593 (1998).

[23] Boykin v. Alabama, 395 U.S. 238, 243 n.5, 89 S. Ct. 1709, 23 L. Ed. 2d 274 (1969); In re Pers. Restraint of Montoya, 109 Wn.2d 270, 277, 744 P.2d 340 (1987).

[24] In re Pers. Restraint of Bradley, 165 Wn.2d 934, 939, 205 P.3d 123 (2009).

in the back of Thomas's car. Corporal Damian Smith, who stopped Thomas's car, testified that while he stood outside of the car, he could see that "in the back seat there [were] two Tupperware tubs, large Tupperware tubs, and I could see in the top one there appeared to be glass fragments." He also testified that he did not participate in retrieving the tubs from the car and did not see them at any later time. Detective David Miller, who searched Thomas's car, testified on cross-examination that he found no glass on the floor, in the carpeting, or on the seats in the car. Because, despite Thomas's claim, defense counsel elicited testimony from Detective Miller that he did not observe any glass in the car, Thomas's claim is meritless.

Witness Exclusion

Next, Thomas claims that the trial court violated its witness exclusion ruling under ER 615 by allowing two different officers to sit in the courtroom on separate days. ER 615 states,

> At the request of a party the court may order witnesses excluded so that they cannot hear the testimony of other witnesses, and it may make the order of its own motion. This rule does not authorize exclusion of . . . (2) an officer or employee of a party which is not a natural person designated as its representative by its attorney.

"Questions concerning the exclusion of witnesses and the violation of that rule are within the broad discretion of the trial court and will not be disturbed, absent manifest abuse of discretion."[25]

---

[25] State v. Schapiro, 28 Wn. App. 860, 867, 626 P.2d 546 (1981) (citing State v. Walker, 19 Wn. App. 881, 578 P.2d 83 (1978); State v. Bergen, 13 Wn. App. 974, 538 P.2d 533 (1975)).

The trial court allowed an officer to sit at counsel table as the State's representative. Thomas complains that the trial court allowed one officer to sit in the courtroom during motions in limine and a different officer to sit in the courtroom during the rest of the trial. The court stated, "Officer Speer is here today because Detective Hawley could not be. Officer Speer may not be able to be here the rest of the week acting as a managing, and Detective Hawley could be." Thomas argues that the court erred by allowing two different officers to sit in the courtroom.

Thomas did not raise this issue at trial. Under RAP 2.5(a)(3), we will review a purported manifest error affecting a constitutional right even if Thomas did not raise the issue in the trial court. Because he fails to show a manifest error affecting a constitutional right, we decline to review this claim.

Confrontation Clause

Thomas also alleges that the trial court violated his rights under the confrontation clause. First, he asserts that the trial court denied him an opportunity to effectively cross-examine the State's witness. Second, Thomas challenges the State's "object[ion] to admission of evidence of the alleged victim[']s 'inconsistent statements to insurance investigators' . . . and the alleged victim[']s prior inconsistent statements about the 'amount of loss suffered.'" We reject these claims.

We review alleged confrontation clause violations de novo.[26] We review limitations on cross-examination for abuse of discretion.[27] A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds.[28]

Under the federal confrontation clause, a criminal defendant has the right to confront and to cross-examine adverse witnesses.[29] This guarantees an adequate opportunity for effective cross-examination, including impeachment with minimally relevant evidence of bias.[30] A trial court "retain[s] wide latitude . . . to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."[31] Thus, a trial court may exercise its discretion to preclude cross-

---

[26] State v. Jasper, 174 Wn.2d 96, 108, 271 P.3d 876 (2012).

[27] State v. Fisher, 165 Wn.2d 727, 752, 202 P.3d 937 (2009).

[28] State v. Emery, 161 Wn. App. 172, 190, 253 P.3d 413 (2011) (quoting State v. Allen, 159 Wn.2d 1, 10, 147 P.3d 581 (2006)).

[29] U.S. CONST. amend. VI; Douglas v. Alabama, 380 U.S. 415, 418, 85 S. Ct. 1074, 13 L. Ed. 2d 934 (1965).

[30] Davis v. Alaska, 415 U.S. 308, 316-18, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974); State v. Hudlow, 99 Wn.2d 1, 15-16, 659 P.2d 514 (1983). Relevant evidence has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." ER 401. "Bias is . . . the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party. Bias may be induced by a witness' like, dislike, or fear of a party, or by the witness' self-interest." United States v. Abel, 469 U.S. 45, 52, 105 S. Ct. 465, 83 L. Ed. 2d 450 (1984).

[31] Delaware v. Van Arsdall, 475 U.S. 673, 679, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986).

examination that merely argues, speculates on, or vaguely suggests bias.[32]

At trial, the State called Officer Ryan Speer, who responded to the smoke shop's alarm, to testify. After defense counsel stated that he had no further questions on recross and the court dismissed the witness, the prosecutor stated, "Your Honor—," to which the court replied, "No, we're not going to go into re-redirect. The witness can step down." Thomas claims that by preventing the State from "clarify[ing] matters brought out on 'Cross,'" the court erroneously "limited the examination of the states [sic] witness." He argues, "[T]here was effectively no effective cross examination even permitted."

The record shows that defense counsel completed his examination of the witness. The trial court's decision to foreclose re-redirect examination does not implicate Thomas's right to confrontation or cross-examination. Therefore, his claim fails.

Thomas further argues that "the [S]tate and court denied the defense the opportunity to make any mention of the alleged victim having made two separate and drastically different insurance claims, . . . and his bias insofar as he had a monetary interest in the case." He also claims that Mr. Anwar tried to commit insurance fraud.

The State moved in limine to limit evidence about Mr. Anwar's insurance claim for the merchandise that he reported missing from the store. In response,

---

[32] State v. Darden, 145 Wn.2d 612, 620-21, 41 P.3d 1189 (2002) (citing State v. Jones, 67 Wn.2d 506, 512, 408 P.2d 247 (1965)).

Thomas argued that Mr. Anwar "came in and said there was nothing missing, and then the victim said there were a number of boxes missing, and all of a sudden there was $3,500 worth of cigarettes missing." Additionally, he asserted that "the victim indicated there were two cigar boxes that were taken. Officer Speer noted the cigar case and said the cigar case looked undisturbed." He noted that officers found no cigarettes along the road or in Thomas's car.

In denying the State's motion to limit evidence about the insurance claim, the court explained,

> [O]bviously he may have a motive and bias to say something was missing because he got paid $6,000 if he said something was missing. . . . He can come in and say, no, the insurance company paid me. They sent out an investigator, they investigated, saw my receipts, paid me. That may actually in fact go against the defendants. I don't know. But that's up to them if they want to pursue that.

The record shows that Thomas impeached Mr. Anwar with the fact that Mr. Anwar reported a greater loss to the insurance company than he originally reported to police. Because nothing in the record indicates that the trial court precluded Thomas from impeaching Mr. Anwar with his prior inconsistent statements, we deny his claim.

Jury Instructions

The court's jury instructions defined "enter": "The term enter includes the entrance of the person, or the insertion of any part of the person's body, or any instrument or weapon held in the person's hand and used or intended to threaten or intimidate another person or to detach or remove property." In the State's

closing argument, the prosecutor stated, "So let's talk about entry of the store. We know they entered the store from a few different ways. First of all, the glass. Well, we've heard there is a rock, and there is a rock found within the store." Thomas contends that the jury instruction and the prosecutor's comments "relieved the State of its burden to prove every element beyond a reasonable doubt . . . in allowing the jury to convict the defendants on the rock having entered the premises rather than a person or human."

We review a trial court's jury instructions for an abuse of discretion.[33] "'Jury instructions are sufficient when they allow counsel to argue their theory of the case, are not misleading, and when read as a whole properly inform the trier of fact of the applicable law.'"[34]

Thomas fails to show that the court's instruction was misleading or that it improperly informed the jury of the applicable law. The instruction tracks RCW 9A.52.010(4), which states that the word "enter," when it constitutes an element or part of a crime, "shall include the entrance of the person, or the insertion of any part of his or her body, or any instrument or weapon held in his or her hand and used or intended to be used to threaten or intimidate a person or to detach or remove property." Based on this definition, the State could establish "entry" if

---

[33] State v. Butler, 165 Wn. App. 820, 835, 269 P.3d 315 (2012).

[34] State v. Davis, ___ Wn. App. ___, 300 P.3d 465, 470 (2013) (internal quotation marks omitted) (quoting State v. Aguirre, 168 Wn.2d 350, 363-64, 229 P.3d 669 (2010)), petition for review filed, No. 88878-7 (Wash. May 30, 2013).

it showed that Thomas held the rock in his hand and used or intended to use it to break the glass.

Aggravating Factor

Thomas also alleges that the State violated his due process rights "when at sentencing without prior pleading, the [S]tate in its State Sentencing Memorandum . . . argued that because of the 'degree of planning and sophistication' defendants deserved the high end of their [sentencing] ranges." Based on Thomas's offender score of three, the court imposed a standard range sentence of nine months of confinement. Because RCW 9.94A.585(1) prohibits a defendant from appealing a sentence within the standard range, we do not review this claim.

Cumulative Error

Finally, in his statement of additional grounds, Thomas argues that the cumulative error doctrine justifies reversing his conviction. "'The cumulative error doctrine applies where a combination of trial errors denies the accused a fair trial even where any one of the errors, taken individually, may not justify reversal.'"[35] Because Thomas fails to establish any errors in the trial court proceedings, we deny his cumulative error claim.

---

[35] In re Pers. Restraint of Yates, 177 Wn.2d 1, 65-66, 296 P.3d 872 (2013) (quoting In re Det. of Coe, 175 Wn.2d 482, 515, 286 P.3d 29 (2012)).

## Conclusion

Because Thomas fails to show that a rational trier of fact could not have found the elements of second degree burglary beyond a reasonable doubt and no evidence in the record supports the claims that Thomas asserts in his statement of additional grounds, we affirm.

_Leach, C.J._

WE CONCUR:

_Spearman, J._

_Appelwick, J._